# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 03-1514/1587

_____

Harry Kohrt,                                                  *
                                                             *
            Cross-Appellant/                                 *
            Appellee,                                        *
                                                             *
      v.                                                     *      Appeals from the United States
                                                             *      District Court for the
MidAmerican Energy Company,                                  *      Southern District of Iowa.
                                                             *
            Appellant/                                       *
            Cross-Appellee.                                  *

_____

Submitted: December 17, 2003
Filed: April 13, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Harry Kohrt, a former employee with more than thirty years of service, sued MidAmerican Energy Company (MEC) for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000), and for

wrongful termination of his at-will employment. The district court[1] granted MEC's pretrial motion for summary judgment on the ADEA claim. The wrongful discharge claim went to trial. A jury found for Mr. Kohrt and awarded him $720,000 in damages. MEC's posttrial motion for a new trial was granted on damages issues. A second jury awarded Mr. Kohrt $920,000. MEC appeals the trial judge's[2] denial of its motion for judgment as a matter of law on the jury-tried wrongful discharge claim, and Mr. Kohrt cross-appeals the adverse grant of summary judgment on his ADEA claim. We affirm.

## I. Background.

In 1997, Kohrt became the safety and training coordinator at MEC with responsibility for promoting safety, investigating accidents, and serving as an information resource on occupational safety and health issues. Kohrt openly disagreed with two existing MEC policies: the one-man crew policy and the body belt policy. Under the one-man crew policy, only one utility lineman was initially sent to respond to service calls. Kohrt believed that two linemen were always necessary because of the inherent risk of injury when working on high voltage, overhead power lines. A body belt with a two foot lanyard was one of two devices available for use by linemen. The other permissible device was called a body harness. Both were designed (1) to prevent them from falling out of an aerial bucket and (2) to protect them from injury by arresting their descent if they did fall out while doing their high work. Kohrt believed the body harness was the only safe method because, when using a body belt, a lineman could still fall out of the bucket and hang suspended from his waist. The

---

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

[2]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, who tried the case with the consent of the parties pursuant to 28 U.S.C. § 636(c).

one-man crew policy and the body belt policy were related; if an accident were to occur, a second lineman would be needed to rescue the imperiled one.

Kohrt also had problems with his supervisor, Jane Tew. Tew became Kohrt's supervisor in May 1998, and she began documenting her problems and discussions with Kohrt. MEC and Tew expected Kohrt to support and promote MEC's one-man crew and body belt policies as part of Kohrt's work as the safety and training coordinator. Kohrt did not do so. At Tew's request, Kohrt prepared a written statement of his views on the policies. Kohrt was fired on December 7, 1998, allegedly for performance reasons, including a failure to communicate with his supervisor and a failure to follow directions. Kohrt argues that he was fired because of his stance on one-man crews and the body belt policy, and he denies that he was ever told that his performance was not satisfactory.

In March 1999, three months after he was fired, Kohrt applied for one of the open positions as a lineman at MEC, but he was not considered. The average age of the linemen hired was thirty-two. Regarding his qualifications for a lineman position, Virginia Dasso, a former manager, said in her June 2001 deposition that she did not know whether Kohrt could climb a pole. Russell White, a vice president, said in his deposition that he did not know if Kohrt would have wanted to return to lineman's work after having been a supervisor. Neither Dasso nor White made the decision not to rehire Kohrt.

Kohrt filed suit in May 2000, alleging age discrimination in violation of the ADEA,[3] and later amended the complaint to allege a state common law claim of

---

[3] The ADEA claim involves only Kohrt's March 1999 application for rehiring. While Kohrt also applied for a lineman position in June 2001, he never amended his court complaint to include that application. Kohrt was not permitted to sue for age discrimination as a result of his December 1998 termination because his right to sue letter had expired.

wrongful discharge in violation of Iowa's public policy as expressed in the Iowa Occupational Safety and Health Act (IOSHA), Iowa Code Chapter 88. As indicated, the district court granted summary judgment pretrial to MEC on the ADEA claim, but a jury twice found in favor of Kohrt on the wrongful discharge claim. MEC appeals the denial of its posttrial motion on the wrongful discharge claim, arguing that the Supreme Court of Iowa would not recognize an exception to the at-will employment doctrine based on the public policy expressed in IOSHA, and Mr. Kohrt cross-appeals the adverse grant of summary judgment on his ADEA claim.

## II. ADEA claim.

We review a district court's decision to grant summary judgment de novo. Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir.), cert. denied, 124 S. Ct. 153 (2003). In this case, the district court "assum[ed] without deciding that Kohrt ha[d] established a prima facie case of age discrimination." (J.A. at 289.) In ADEA cases, once the plaintiff succeeds in establishing a prima facie case, "a rebuttable presumption of unlawful discrimination is created." Mayer, 318 F.3d at 807. The employer then has the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action. Id.

> If the employer provides a non-discriminatory reason, the presumption of discrimination disappears, and the plaintiff can only avoid summary judgment if he or she presents evidence that considered in its entirety, (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.

Hindman v. Transkrit Corp., 145 F.3d 986, 991 (8th Cir. 1998). Stated in simpler terms, in order to survive summary judgment, Kohrt "must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

reasons, but were a pretext for discrimination.'" Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004) (quoting Reeves v. Sanderson Plumbling Prod. Inc., 530 U.S. 133, 143 (2000)).

The district court found that MEC "ha[d] met its burden of articulating a legitimate, nondiscriminatory reason for refusing to rehire [Kohrt]." (J.A. at 289.) Kohrt then had the burden of proving "that these proffered reasons [were] pretextual and that his age was the true reason for the action." (Id.) Kohrt argues that the following evidence permitted a reasonable inference of age discrimination sufficient to survive summary judgment: (1) his 1998 termination was unfair and therefore cannot justify the failure to hire him; (2) MEC did not follow company policy because it should have given him a hiring preference as a veteran; (3) MEC gave conflicting reasons for its refusal to hire him because MEC told the Iowa Civil Rights Commission that it had a policy against hiring employees previously fired for cause, but Randy Stein, who made the hiring decision, said that he did not interview Kohrt because Kohrt had no recent lineman experience; (4) MEC employees Paul Roe and Roger Brown were both rehired after their earlier terminations; (5) the problems resulting in his termination would not have been relevant to his work as a lineman; (6) MEC's statement that Kohrt lacked recent experience evidenced pretext because the statement was untrue; and (7) the comments made by Dasso and White in their depositions indicated that age discrimination was the reason that he was not hired.

The district court held that Kohrt's ADEA claim did not survive summary judgment "because the evidence [he presented did] not create a reasonable inference that age was a determinative factor in the decision not to rehire him." (J.A. at 290.) We agree. We hold that the district court properly granted summary judgment on the ADEA claim. The showing of pretext necessary to survive summary judgment "requires more than merely discrediting [MEC's] proffered reason for the adverse employment decision. [Kohrt] must also prove that the proffered reason was a pretext

5

for age discrimination." Spencer v. Stuart Hall Co., 173 F.3d 1124, 1128 (8th Cir. 1999).

None of the evidence that Kohrt offers suggests that age discrimination was the determinative factor in the decision not to rehire him. Kohrt admits that, at the time of his application, he had not worked as a lineman since October 1987, and he does not dispute that the other candidates had more recent experience than he. MEC offered undisputed evidence that Paul Roe was not fired for cause and that Roger Brown was never terminated at all. We also agree with the district court that the comments of Dasso and White do not help Kohrt's ADEA claim survive summary judgment. The statements were not made at or near the time the decision not to hire Kohrt was made, and they were not made by the decisionmaker. We have held that "some causal relationship is necessary to demonstrate the significance of non-contemporaneous statements, or statements made by persons other than the relevant decision-maker, to the resolution of the ultimate issue of intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir. 1995). Kohrt's ADEA claim generally "is supported more by contentions and speculation than evidence, [and] it is insufficient to withstand summary judgment." Girten v. McRentals, Inc., 337 F.3d 979, 982 (8th Cir. 2003). Accordingly, the district court's judgment granting summary judgment on the ADEA claim is affirmed.

III. Wrongful Discharge Claim.

We review the district court's interpretation of Iowa law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). Whether an action lies for wrongful discharge in violation of the public policy behind IOSHA would be a question of first impression in the Supreme Court of Iowa. In Iowa, a discharge in violation of public policy is recognized as an exception to the at-will employment doctrine. Fitzgerald v. Salsbury Chem., Inc., 613 N.W.2d 275, 281 (Iowa 2000).

"[This tort] exists when a protected activity has been recognized through the implementation of an underlying public policy that would be undermined if an employee were discharged from employment for engaging in that activity." Davis v. Horton, 661 N.W.2d 533, 535 (Iowa 2003). To prevail on a claim of wrongful discharge in violation of public policy, the Supreme Court of Iowa has held that the following elements must be satisfied:

> (1) The existence of a clearly defined public policy that protects an activity.
> (2) The policy would be undermined by a discharge from employment.
> (3) The challenged discharge was the result of participating in the protected activity.
> (4) There was lack of other justification for the termination.

Id. at 535; see also Fitzgerald, 613 N.W.2d at 282 n.2. The first two factors are questions of law determined by the court. Davis, 661 N.W.2d at 282.

The Supreme Court of Iowa has stated that it looks to the Iowa Constitution and to Iowa statutes for both expressly stated and implied principles of public policy. Id. at 283. Noting that some statutes articulate public policy by prohibiting employers from firing employees who have engaged in particular conduct, the court added that it "[does] not limit the public policy exception to specific statutes which mandate protection for employees. Instead, [it] look[s] to other statutes which not only define clear public policy but imply a prohibition against termination from employment to avoid undermining that policy." Id. (internal citation omitted). At the same time, the court has declared that "[a]ny effort to evaluate the public policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself." Id.

7

After a careful review of Iowa law and the statute involved, we hold that IOSHA presents a clear and well-recognized statement of public policy. In enacting IOSHA, the Iowa legislature has explicitly stated that it is the public policy of Iowa to encourage employees to improve workplace safety.

> 88.1  Public Policy.
>
> It is the policy of this state to assure so far as possible every working person in the state safe and healthful working conditions and to preserve human resources by:
>
> 1.     Encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and perfect existing programs for providing safe and healthful working conditions.

Iowa Code § 88.1 (2003). In addition, § 88.9(3) states:

> 3.     *Discrimination and discharge.* A person shall not discharge or in any manner discriminate against an employee because the employee has filed a complaint or instituted or caused to be instituted a proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by the employee on behalf of the employee or others of a right afforded by this chapter.

Iowa Code § 88.9(3) (2003). In Fitzgerald, the Supreme Court of Iowa stated, "Some statutes articulate public policy by specifically prohibiting employers from discharging employees for engaging in certain conduct or other circumstances," and then listed § 88.9(3) in a footnote with a dozen other similar statutory prohibitions. Fitzgerald, 613 N.W.2d at 283. We believe Fitzgerald indicates that the Supreme Court of Iowa would find a clear statement of public policy in § 88.1 of encouraging employees to

8

work toward high safety standards and a clear statement of public policy in § 88.9(3) against discharging an employee for complaining about safety issues.

Section 88.9(3) not only makes it unlawful to discriminate against or discharge an employee for making an IOSHA complaint, it also empowers the Iowa Commissioner of Labor to investigate any complaint of discrimination or discriminatory discharge including the power to bring suit to obtain all appropriate relief for the employee, including rehiring, reinstatement, and back pay.

> An employee who believes that the employee has been discharged or otherwise discriminated against by a person in violation of this subsection may, within thirty days after the violation occurs, file a complaint with the commissioner alleging discrimination. Upon receipt of the complaint, the commissioner shall conduct an investigation as the commissioner deems appropriate. If, upon investigation, the commissioner determines that the provisions of this subsection have been violated, the commissioner shall bring an action in the appropriate district court against the person. In any such action, the district court has jurisdiction to restrain violations of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to the employee's former position with back pay. Within ninety days of the receipt of a complaint filed under this subsection, the commissioner shall notify the complainant of the commissioner's determination under this subsection.

Iowa Code § 88.9(3).

MEC contends that even if the Supreme Court of Iowa were to recognize a public policy based on IOSHA, the court would allow no common law action to be brought by an employee because it would hold that the administrative remedy in § 88.9(3) is exclusive. Stated another way, MEC argues that only the Commissioner can bring an action in court to remedy a discharge that violates IOSHA's

9

nonretaliation provision. MEC cites <u>Borschel v. City of Perry</u>, 512 N.W.2d 565, 567-68 (Iowa 1994), where the Supreme Court of Iowa held that the Iowa civil rights statute "preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts." As a result, there is no common law claim for wrongful discharge in violation of public policy when the public policy violated involves an employee's statutorily protected civil rights. Recovery must be had under the civil rights statute. MEC argues that IOSHA is comparable, prohibiting a common law suit because of the statutory creation of an administrative remedy in the form of a Commissioner's complaint.

However, we conclude that the two statutes are readily distinguishable. The civil rights statute reads, "A person claiming to be aggrieved by an unfair or discriminatory practice <u>must initially seek an administrative relief</u> by filing a complaint with the commission in accordance with section 216.15." Iowa Code § 216.16(1) (2003) (emphasis added). Section 88.9(3), in comparison, contains no mandatory language; it says that an employee <u>may</u> file a complaint with the Commissioner. We believe the difference is significant.

Whether or not the existence of the administrative complaint procedure and the Commissioner's court action prevents an employee from bringing a common law wrongful discharge public policy claim is a difficult question and one which requires us to predict what the Supreme Court of Iowa would do with the issue. An Iowa state district court judge has ruled that the statute precludes a common law claim.

> If the legislature had intended a private cause of action could be brought for violation of Chapter 88['s] provisions, it simply could have added at the end of section 88.20 or elsewhere in the chapter [that] an employee injured by an employer's violation of the provisions of Chapter 88 may resort to a common law action for wrongful discharge . . . .

10

Bevier v. United Health Sys., No. LACV013509, slip op. at 5-6 (Iowa D. Ct. for Muscatine County Sept. 23, 2002) (Madden, J.), appeal dismissed, No. 02-1639 (Iowa Oct. 24, 2003). (See J.A. at 418-19.)

On the other hand, our brother Melloy, then a United States District Judge sitting in the Northern District of Iowa, reached the opposite conclusion in Ferrell v. IBP, Inc., No. C98-4047, 1999 WL 33656878 (N.D. Iowa Aug. 24, 1999).

> On its face, § 88.9(3) contains no prohibition on wrongful discharge claims. Section 88.9(3) states that an employee may file a complaint with the labor commissioner. Such action is permissive and is required to initiate the remedial process detailed specifically in the statute . . . . However, § 88.9(3) does not show an intent on the part of the legislature to preclude an employee from suing on his own behalf. If the legislature had wanted to foreclose a private common law cause of action, it could have done so expressly.

Id. at *11. Judge Melloy's interpretation is supported by the fact that the Supreme Court of Iowa has not precluded a common law wrongful discharge action in a similar setting. In Tullis v. Merrill, 584 N.W.2d 236, 238 (Iowa 1998), the plaintiff asserted a claim of common law wrongful discharge in violation of public policy when the employer fired the plaintiff for seeking wages that were owed to the plaintiff. The Supreme Court of Iowa allowed the common law claim, even though the Iowa wage payment collection statute containing the statement of public policy also had a commissioner's enforcement provision almost identical to that in § 88.9(3). Id. at 239 (citing Iowa Code § 91A.10(5)). Lest we overstate the holding, we note that in Tullis, the Supreme Court of Iowa did not reach the issue of whether "the prohibitory language of § 91A.10 furnished no private cause of action for its violation" because it was not raised before the trial court. Nonetheless, it affirmed the jury's verdict for the plaintiff on the common law wrongful discharge claim.

11

MEC also argues that because there is no private cause of action for wrongful discharge under the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651-678, a private, common law action based on the public policy in IOSHA should be prohibited as well. We respectfully disagree. While there may be no private right to sue for wrongful discharge under the federal OSHA, the reason is because there is no federal <u>common law</u> action for wrongful discharge in violation of public policy; any federal action would have to have a statutory basis. See <u>Taylor v. Brighton Corp.</u>, 616 F.2d 256, 258-59 (6th Cir. 1980) (analyzing whether Congress intended to create a private remedy for violations of OSHA). We are concerned here with a common law action for wrongful discharge in violation of Iowa's public policy. Consistent with the common law nature of the action, we have held that the federal OSHA's remedial scheme, which is nearly identical to that found in Iowa Code § 88.9(3), does not preempt a state law claim of wrongful discharge in violation of public policy. <u>Schweiss v. Chrysler Motors Corp.</u>, 922 F.2d 473, 475 (8th Cir. 1990).

We also determine that the public policy expressed in IOSHA would be undermined if MEC were permitted to discharge an employee for voicing safety concerns. If employers were permitted to discharge employees for such conduct, then employees would be hesitant to articulate safety concerns because to do so would potentially put their jobs at risk. Clearly, a public policy that encourages employees "to institute new and [to] perfect existing safety programs" is undermined when an employee can be discharged for doing exactly what the policy encourages.[4]

---

[4]Kohrt made a protected complaint under the statute, both orally and by submitting a written statement to Tew. We note that the protection of § 88.9(3) extends to internal, good faith complaints made by an employee directly to an employer. Iowa Admin. Code. § 875-9.9(3). The definition of "complaint" under § 88.9(3) is "commensurate with the broad remedial purposes of [the] legislation and the sweeping scope of its application." Iowa Admin. Code. § 875-9.9(1).

12

Although the issue is not free from doubt, we hesitantly predict that if presented with the issue, the Supreme Court of Iowa would conclude that an employee may bring a common law wrongful discharge suit premised on a violation of Iowa's public policy as declared in §§ 88.1 and 88.9(3).

Accordingly, for the reasons stated, we affirm the final judgment of the district court entered on January 29, 2003.

_____