# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1738

———————

Connie M. Gretillat,　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant,　　　　　　*
　　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Care Initiatives,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee.　　　　　　 *

———————

Submitted: October 19, 2006
Filed:  March 30, 2007

———————

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Connie Gretillat alleged that her employer, Care Initiatives, forced her to retire or be terminated in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code § 216.6(1)(a).  The district court[1] granted summary judgment to Care Initiatives, holding that Gretillat was not disabled under the ADA and therefore not entitled to its statutory protection. Gretillat appeals, arguing that not only was she disabled, but that she was otherwise

———————

[1]The Honorable Linda R. Reade, now Chief Judge, United States District Court for the Northern District of Iowa.

qualified for the job as long as she was provided reasonable accommodations for her disability and that Care Initiatives knew of her disability and forced her to depart because of it.  We affirm.

## I.

Gretillat started working as a Dietary Services Manager for the Valley View nursing home in 1990.  Care Initiatives operated the nursing home.  In 1993, Care Initiatives issued a job description for her position, which Gretillat signed.  Essential functions of the Dietary Service Manager, as enumerated in the job description, included performing "any food service task necessary [for the] provision of meals according to schedule and standards of practice" and "[covering] for absent staff if unable to find a replacement."  The document also specified stooping, kneeling, crouching, and crawling as physical activities associated with the job.[2]

Gretillat covered full shifts as a cook through the mid-1990s because the leanly staffed kitchen could not otherwise prepare necessary meals.  When Valley View's resident population increased, more cooks were hired.  From that point on, Gretillat covered two- to three-hour kitchen shifts only on occasion.  Sometime in 1999, Gretillat began experiencing severe pain in her right knee which was later diagnosed as osteoarthritis.  At that time, her supervisor, Monte Priske, observed Gretillat having trouble walking long distances.  He thereafter excused her from making rounds of the facility – a task not considered an "essential function."

Gretillat underwent knee-replacement surgery in September 2003.  In November 2003, Gretillat's physician, Dr. Margaret Fehrle, released Gretillat to return

---

[2]In 2003, Care Initiatives issued a revised version of this document detailing the proportion of time a Dietary Services Manager would be engaged in each physical activity.  Gretillat did not sign the revision.

to work. The restrictions form completed by Dr. Fehrle and given to Care Initiatives indicated that Gretillat was released without restriction.[3]

As the nursing home population decreased, Care Initiatives likewise had a reduced need for dietary care planning services. Instead of cutting her staff's hours, Gretillat reduced her own hours. At some point after her surgery, Gretillat asked Priske for additional dietary care planning hours. Priske indicated that because of the declining resident population no additional dietary care planning work was required, and that if Gretillat intended to return to full-time hours, she would have to work in the kitchen. In December 2003, after receiving a request for a restriction from Gretillat, Dr. Fehrle faxed to Care Initiatives a new form restricting Gretillat from standing on her right knee for more than an hour without rest. All other restrictions on this updated form remained unchecked.

Gretillat was seen by Dr. Fehrle on February 17, 2004. After examining Gretillat's right knee, Dr. Fehrle concluded that she was doing well and could return to work and "do whatever she wishes." That same day, Gretillat covered for absent staff in the kitchen. After working for three-and-a-half hours of a four-hour shift, Gretillat was unable to walk, was limping, and was experiencing a good deal of pain. She declared that she "[couldn't] take it anymore" and that she was unable to work the full kitchen shift. Priske then asked Gretillat to participate in a fitness-for-duty examination (FFD).

Wendy Paca, a nurse practitioner, conducted the FFD examination. Paca asked Gretillat to squat, kneel, crouch, and crawl, but Gretillat refused to cooperate. Paca's FFD report stated that Gretillat would not attempt the requested tasks, cited Gretillat

---

[3]The form had unmarked check-boxes next to potential restrictions. The unchecked restrictions included those of bending, crawling, reaching, squatting, stooping, finger movement, climbing, kneeling, sitting, standing, walking, and wrist and hand movement.

as having said that attempting the tasks would be contraindicated given the recency of her knee surgery, and conveyed Gretillat's contention that she could not complete the tasks on that day even were she to try.

After having had an opportunity to review Paca's report, Priske told Gretillat that she would be expected to work in the kitchen two to three days a week. Since Gretillat could not do this, Priske allowed her to choose between termination and resignation. Gretillat resigned effective March 26, 2004.

Thereafter, Gretillat brought this action, alleging that by requiring her to perform full kitchen shifts, Care Initiatives removed a reasonable accommodation previously provided to her and thereby discriminated against her because of her disability. In granting Care Initiatives' motion for summary judgment, the district court held that there were no genuine issues of material fact and that as a matter of law Gretillat could not succeed in her claims because she was not disabled within the meaning of the ADA.

## II.

We review the district court's grant of summary judgment *de novo*. See Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 684 (8th Cir. 2003). In so doing, we view the facts in the light most favorable to the nonmoving party and we will affirm if the record indicates no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Gretillat's claim alleges disability discrimination under the ADA and IRCA. Where, as here, the parties do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA. See McElroy v. State, 703 N.W.2d 385, 391 (Iowa 2005); see also Nuzum v. Ozark Auto. Distribs.,

Inc., 432 F.3d 839, 842 n.2 (8th Cir. 2005); Simpson v. Des Moines Water Works, 425 F.3d 538, 542 n.3 (8th Cir. 2005).

The ADA prohibits employer "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a) (2006). The core of every ADA disability definition involves a physical or mental impairment that substantially limits one or more major life activity. 42 U.S.C. § 12102(2) (2006); see also Nuzum, 432 F.3d at 843 (defining disability). A "physical impairment" includes "any physiological disorder or condition [affecting the] musculoskeletal [body system]." 45 C.F.R. § 84.3(j)(2)(i) (2005). The condition affecting Gretillat's right knee qualifies as a **"physical impairment"** under the ADA.

The terms "major life activities" and "substantial limitation" must be "interpreted strictly to create a demanding standard for qualifying as disabled . . . ." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002); accord Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm., 370 F.3d 763, 768 (8th Cir. 2004). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2006). More generally, they include "activities that are of central importance to daily life." Williams, 534 U.S. at 197. A court should consider the nature, severity, duration, and long-term impact of the impairment when deciding whether that impairment substantially limits a major life activity. Wood, 339 F.3d at 685 (citing 29 C.F.R. § 1630.2(j)(2) (2002) and Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1088 (8th Cir. 2001)). The impairment must be of an extended or permanent duration, Williams, 534 U.S. at 198, and should be considered substantially limiting only if "an individual is '[s]ignificantly restricted as to the condition, manner or duration under which . . . the average person in the general population can perform that same major life activity.'" Moysis v. DTG Datanet, 278 F.3d 819, 825 (8th Cir. 2002) (alteration in original) (quoting 29 C.F.R. §

1630.2(j)(1)(ii)). Furthermore, merely demonstrating that an impairment prevents one from performing job functions in the absence of accommodations does not suffice to demonstrate a disability. Nuzum, 432 F.3d at 842.

## A. Limitations Known to Care Initiatives

The district court considered only the walking and standing limitations of which Care Initiatives had knowledge. Walking and standing are major life activities. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999); Weber v. Strippit, Inc., 186 F.3d 907, 912-13 (8th Cir. 1999); Williams, 534 U.S. at 195. Nevertheless, nothing presented by Gretillat concerning her walking and standing limitations suggests to us that she was substantially limited in these activities. We find, as did the district court, our analysis in Wood instructive for the present case. The plaintiff in Wood similarly alleged walking and standing limitations: he could walk no more than a quarter of a mile without rest, frequently made use of a cane, experienced numbness in his left leg and foot, and suffered from a leg that would occasionally collapse beneath him. Wood, 339 F.3d at 685. With respect to the severity of his walking limitation, we acknowledged Williams's heightened standard in addition to our own precedent and "categorize[d] Wood's walking limitations as moderate, not substantial, for ADA purposes." Id., 339 F.3d at 685; see also Weber, 186 F.3d at 914 (stating that difficulty walking long distances does not constitute a disability under the ADA). In terms of Wood's standing limitation, we also considered it "insufficient to sustain an ADA claim given the high bar set by Williams." Wood, 339 F.3d at 686. A limited standing limitation does not amount to a disability. See, e.g., Dupre v. Charter Behavioral Health Sys. of Lafayette Inc., 242 F.3d 610, 614 (5th Cir. 2001) (holding that an inability to stand for up to an hour does not constitute a disability); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 186-87 (3d Cir. 1999) (requiring an hourly break from standing or walking does not amount to a disability). The limited extent of Gretillat's known standing and walking limitations, then, do not constitute a disability. Although we do not doubt that they

inconvenience Gretillat, the district court correctly concluded that Gretillat's limitations are less severe than those which existed in Wood. Gretillat experiences no numbness, her leg does not occasionally collapse, and there is no evidence that she sometimes requires the use of a cane.

### B. Limitations Not Known to Care Initiatives

After Gretillat's departure from Care Initiatives, Dr. Fehrle submitted a conclusory affidavit stating, *inter alia*, that (1) she considers Gretillat disabled both before and after the knee surgery;[4] (2) Gretillat's ability to kneel, crouch, squat and crawl is significantly worse than that of average individuals of her age and sex; (3) Gretillat is permanently restricted in kneeling, crouching, squatting and crawling; and (4) she had not previously indicated these restrictions on forms provided to Care Initiatives because she had misunderstood the physical requirements of Gretillat's job.

Even accepting, *arguendo*, that Gretillat's impaired knee substantially and permanently restricts her ability to crawl, kneel, crouch, and squat, these functions cannot meet the demanding standard required by Williams for us to consider them major life activities. Williams, 534 U.S. at 197. We are guided by "[t]he plain meaning of the word 'major[,' which] denotes comparative importance and suggest[s] that the touchstone for determining an activity's inclusion under the statutory rubric is its significance." Bragdon v. Abbott, 524 U.S. 624, 638 (1998) (internal quotation marks and citation omitted) (first and last alteration in original). Crawling, kneeling, crouching, and squatting cannot be qualitatively characterized as sufficiently significant or essential to be on par with the functions set forth in 29 C.F.R. § 1630.2(i) as exemplifying major life activities. See Miller v. Wells Dairy, Inc., 252 F. Supp. 2d 799, 807 (N.D. Iowa 2003), *aff'd*, 90 Fed. Appx. 193, 194 (8th Cir. 2004)

---

[4]A medical diagnosis of an impairment cannot qualify as a disability *per se*; instead, a plaintiff "must satisfy the ADA's demanding standard in each individual case in the context of the major life activity asserted." Ristrom, 370 F.3d at 769.

(unpublished per curiam decision) (stooping, squatting, and kneeling are not major life activities); see also Miller v. Airborne Express, No. 3:98-CV-0217-R, 1999 WL 47242, at *4 (N.D. Tex. Jan 22, 1999) ("While [plaintiff's] knee injury may substantially limit his ability to crawl, kneel, squat, or climb, this Court finds that those actions do not constitute major life activities, as defined under the ADA."); Hockaday v. Brownlee, 370 F. Supp. 2d 416, 423 (E.D. Va. 2004) (crawling, kneeling, and squatting are not major life activities). But see Prince v. Claussen, No. 98-1064, 1999 WL 152282, at *5 (10th Cir. March 22, 1999) (unpublished table decision) (declaring squatting to be a major life activity without explanation).

Nor is there any indication that Gretillat's limitations, taken together, severely limit any major life activity. See Nuzum, 432 F.3d at 846 (suggesting that a combination of limitations may together render one disabled). Gretillat presented no evidence raising a genuine issue of material fact as to whether she is substantially limited in any major life activity.[5] See Philip v. Ford Motor Co., 328 F.3d 1020, 1025 (8th Cir. 2003) (applying the Williams standard to the major life activities of gripping,

---

[5]Gretillat also contends that she is substantially limited in the activity of working. Even were we to treat working as a major life activity, see Nuzum, 432 F.3d at 844 (recognizing that the Supreme Court questions whether "working" is a major life activity but noting that we have considered it such), Gretillat supports her argument with conclusory statements and failed to present necessary evidence supportive of her contention that she was unable to work in a broad class of jobs. Cf. Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92 (1999) (discussing the requirements necessary to establish a substantial limitation in working and stating that a preclusion from working in specialized jobs or a particular job of choice is not enough); 29 C.F.R. § 1630.2(j)(3) (describing facts relevant for consideration relating to the availability of certain job types in the geographic area); Wood, 339 F.3d at 686. Accordingly, in the absence of affirmative evidence necessary to establish her claimed limitation, Gretillat cannot demonstrate that she is substantially limited in her ability to work. See Hansen v. Seabee Corp., 688 N.W.2d 234, 243 (Iowa 2004); Gelabert-Ladenheim v. Am. Airlines, Inc., 252 F.3d 54, 62 (1st Cir. 2001); EEOC v. Rockwell Int'l Corp., 243 F.3d 1012, 1018 (7th Cir. 2001).

reaching, lifting, standing, sitting and walking and stating that plaintiff must show how limitations impact tasks central to peoples' daily lives); <u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 565-66 (1999) (citing <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 482 (1999), for the proposition that mitigating measures must be taken into account in judging whether an individual possesses a disability).  To the contrary, as the district court noted, Gretillat admitted in her deposition that her impairment does not prevent her from accomplishing tasks central to people's daily lives provided that she takes breaks.  <u>Gretillat v. Care Initiatives</u>, 414 F. Supp. 2d 901, 912 (N.D. Iowa 2006) (citing <u>Wood</u>, 339 F.3d at 685-86 and <u>Williams</u>, 534 U.S. at 202).  Her testimony also indicated that she is fully capable of creatively mitigating the effects of her impairment.  Accordingly, the district court properly concluded that Gretillat's limitations do not render her disabled under the ADA and that Care Initiatives is thus entitled to summary judgment as a matter of law.

The judgment is affirmed.

_____