# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1004

_____

Deana Tusing,                                  *

                                         *

         Appellant,                   *

                                         *   Appeal from the United States

      v.                              *   District Court for the

                                         *   Southern District of Iowa.

Des Moines Independent Community  *

School District, dba Des Moines     *

Public Schools; Celeste Keeling;    *

Dee Culp,                            *

                                         *

         Appellees.                   *

_____

Submitted: October 21, 2010
Filed: April 12, 2011

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Deana Tusing sued the Des Moines Independent Community School District, Celeste Kelling, and Dee Culp (collectively, "School District"), challenging the School District's failure to hire her for two positions and its transfer of her to a different teaching position at another school. Tusing alleged age and disability discrimination, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Iowa Civil Rights Act (ICRA), Iowa Code § 216 et seq. The

district court[1] granted the School District's motion for summary judgment on all claims. For the reasons set forth below, we affirm.

## I. *Background*

Tusing, age 52, began working for the School District as an elementary school teacher in August 2001, when she was 41 years old. She held several teaching positions within the School District during the relevant time period. Throughout this time, Kelling worked as the deputy director of human resources for the School District. Culp worked as the assistant principal at Wright Elementary when Tusing taught there.

### A. *School Counselor Position*

In April 2007, the School District advertised available counseling positions. To apply for an open position, a current employee of the School District only needed to submit a letter of interest. Tusing sent letters to Kelling in April and June 2007 expressing her interest. In all, the School District received over 30 applications in response to its advertisement.

The School District did not interview Tusing for the counselor position. The School District stated that it only interviewed applicants who were licensed or certified. The record shows that the candidates considered for interviews all had licenses prior to June 2007. It is undisputed that, at that time, Tusing did not have a conditional license and had not applied for one. Tusing never received any response to her letters of interest in the counselor positions. Kelling stated that Tusing was not interviewed because she was not licensed to be a counselor at that time.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

The School District ultimately hired five counselors in July and August 2007. At that time, Tusing was 47 years old. The School District hired five counselors who were 27, 29, 32, 40, and 46 years old. Kelling testified that all five had counseling licenses (conditional or otherwise). One of those five, Sarah Walljasper,[2] the 27-year-old, had not completed her internship requirements or attained her master's degree. She had, however, obtained a conditional license. In November 2007, the School District hired another counselor, who was 37 years old. In all of 2006, the School District hired seven counselors, who were 25, 27, 31, 35, 48, 53, and 57 years old.

## C. *Literacy Leader Position*

In July 2004 and again in April 2006, Tusing sent Kelling letters expressing her interest in a literacy leader position. She was not interviewed or hired for a literacy leader position either time.

On July 16, 2007, Tusing sent Kelling an e-mail expressing her interest in available literacy leader positions. Because she was also interested in a counselor position, she informed Kelling that she would be willing to accept a half-time position as a literacy leader and a half-time position as a counselor. Tusing was not hired or interviewed as a literacy leader at this time. A document listing the School District's new employees shows that two literacy leaders, who were 31 and 40 years old, were hired in 2006, but the document also shows that their "hire date" was August 2007. The record does not indicate whether either of these people had a disability. Similarly, the record contains nothing about the ages or disability status of any other applicants for the literacy leader position.

---

[2]In June 2006, the School District interviewed four candidates for a counseling position, including Walljasper, despite the fact that Walljasper did not have a conditional license at this time. Walljasper was offered the job but ultimately not hired because she did not have her license.

D. *0.8 Teaching Position Transfer at Studebaker Elementary*

In the 2006–2007 school year, Tusing worked as a full-time kindergarten and reading recovery teacher at Wright Elementary. In April 2007, she renewed her contract for full-time employment with the School District.

At this time, Tusing needed to complete 350 internship hours in order to finish the requirements for her master's degree in counseling at Drake University. Tusing wanted to keep her full-time teaching position at Wright while completing her counseling internship at the same time. Specifically, she hoped to conduct counseling activities before and after school and during lunch. Culp, the vice principal at Wright, did not believe it was feasible to teach full-time and log counseling internship hours simultaneously. Culp testified that she had spoken with the School District's head of counseling about the matter, who agreed that it was not feasible to complete 350 hours of a counseling internship while teaching full-time. In her deposition, Tusing agreed that she did not have enough time to teach full-time and log hours toward her internship.

Culp further testified that she discussed four options with Tusing for completing her internship requirements. Among those, Tusing could transfer to Studebaker Elementary for an open "0.8" teaching position (teaching at 80 percent of full-time and receiving 80 percent of full pay). This option would allow her to keep her benefits with the School District and use the remaining 20 percent of her time to log hours toward her counseling internship.

On May 2, 2007, Tusing requested a transfer to the 0.8 position at Studebaker. On June 12, 2007, she signed a contract for the position. In her deposition, she agreed that she signed the contract "of [her] own free will" but also stated that she was "strongly persuaded" to sign it. She then testified, however, that she knew that she could have stayed at Wright if she wanted, but she wanted to transfer to Studebaker

to complete her degree requirements. Tusing also testified that her transfer to Studebaker did not result from any unlawful discrimination.

## II. *Discussion*

On appeal, Tusing argues that the district court erred in granting summary judgment. Tusing alleged that the School District discriminated against her on the basis of her age and disability when they (1) failed to hire her for an elementary school counselor position, (2) failed to hire her for a literacy leader position, and (3) "forced" her to transfer to a 0.8 teaching position at another school. On each claim, she argues that genuine issues of material fact existed, precluding summary judgment.

We review a district court's decision to grant a motion for summary judgment de novo, applying the same standards for summary judgment as the district court. *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078 (8th Cir. 2008) (citation omitted). Summary judgment is appropriate where the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists, such that the movant is entitled to judgment as a matter of law. *Id.* "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Id.* at 1078–79. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### A. *School Counselor Position*
#### 1. *Age Discrimination Claim*

Tusing first argues that genuine issues of material fact exist on her claim of age discrimination with respect to the elementary school counselor position. She maintains, with little elaboration, that she presented sufficient evidence to establish

a prima facie case of age discrimination. Tusing notes she was older than all the counselors hired in the summer of 2007.

Further, Tusing argues that the School District's stated reason for not hiring her—that she did not have a counseling license, conditional or otherwise—was a pretext for age discrimination. Tusing argues that there is a genuine fact issue whether the stated reason was false.

Tusing alleged age discrimination in violation of the federal ADEA and the state ICRA. Normally, we apply the same analysis to age discrimination claims under the ADEA and the ICRA. *King v. United States*, 553 F.3d 1156, 1160 n.3 (8th Cir. 2009). Recent developments in the interpretations of both statutes suggest one exception to this general rule. The ADEA prohibits employers from failing or refusing to hire an employee because of that employee's age. 29 U.S.C. § 623(a)(1). Similarly, the ICRA prohibits employers from refusing to hire an employee "because of the age . . . of such applicant or employee." Iowa Code § 216.6(1)(a). The Supreme Court recently held that the ADEA requires a plaintiff "to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). Shortly after *Gross* was decided, however, the Supreme Court of Iowa interpreted the ICRA as requiring the plaintiff to prove only that age was a "motivating factor" in—and not necessarily "the only reason" for—the employer's decision. *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 12–13 (Iowa 2009). In a "pretext" case, such as this one, the Iowa Supreme Court's interpretation of the ICRA arguably creates a lower standard than the Supreme Court's interpretation of the ADEA. *See Newberry v. Burlington Basket Co.*, 622 F.3d 979, 981–83 (8th Cir. 2010) (examining, in light of *Gross* and *DeBoom*, a jury instruction requiring that age be a "motivating factor" and finding error under the ADEA and *Gross* but no error under the ICRA and *DeBoom*). Applying the appropriate analysis to each claim, we hold Tusing has failed to produce evidence sufficient to create a genuine issue of material fact under either standard.

"A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence." *King*, 553 F.3d at 1160. "[W]here the plaintiff presents indirect evidence of discrimination, the court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* Since Tusing has presented no direct evidence of intentional age discrimination, and both parties have applied the *McDonnell Douglas* framework to analyze her claim, we analyze Tusing's claim under the familiar *McDonnell Douglas* burden-shifting framework.[3]

Under the *McDonnell Douglas* analysis, the plaintiff has the initial burden to establish a prima facie case of age discrimination. *Id.* at 1162. Once she has done so, "the burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for its employment action." *Id.* (quotation and citation omitted). Finally, "[t]he burden . . . shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination." *Id.* (quotation and citation omitted).

---

[3]Applying *McDonnell Douglas*, we acknowledge that the Supreme Court, in *Gross*, noted that the Court has not "definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." 129 S. Ct. at 2349. After *Gross*, however, we have, on at least one occasion, applied the *McDonnell Douglas* framework to age discrimination claims. *See Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010); *see also Baker v. Silver Oak Senior Living Mgmt.*, 581 F.3d 684, 688 (8th Cir. 2009) (finding that, although *Gross* left the question unresolved, "the ultimate question of age discrimination" could be addressed because the trial court fully developed the record for summary judgment under the burden-shifting framework). The *McDonnell Douglas* analysis is likely still an appropriate way to analyze ADEA "pretext" claims, however, because *McDonnell Douglas* only shifts the burden of *production*. *See King*, 553 F.3d at 1162. In contrast, *Gross* stated that in ADEA "mixed motive" cases, "the plaintiff retains the burden of *persuasion* to establish that age was the 'but-for' cause of the employer's adverse action." 129 S. Ct. at 2351 (emphasis added).

a. *Prima Facie Case*

To establish a prima facie case of age discrimination based on a failure to hire, a plaintiff must prove "(1) that the plaintiff was in the protected age group (over forty); (2) that the plaintiff was otherwise qualified for the position; (3) that the plaintiff was not hired; and (4) that the employer hired a younger person to fill the position." *Wingate*, 528 F.3d at 1079 n.3. For purposes of this analysis, we will assume without deciding that Tusing has established a prima face case.

b. *Pretext for Age Discrimination*

After establishment of a prima facie case of age discrimination, the School District has the burden of producing a legitimate, nondiscriminatory reason for not interviewing or hiring her for the counselor position. *See King*, 553 F.3d at 1162. The School District stated that it did not interview or hire Tusing for the school counselor position because she was not licensed, either permanently or conditionally, as a counselor. This is a legitimate, nondiscriminatory reason. *Cf.* , 123 F.3d at 1038 (stating that "[i]dentifying those strengths that constitute the best qualified applicant is, however, a role best left to employers"). Thus, the presumption of unlawful age discrimination disappears. *See Carraher v. Target Corp.*, 503 F.3d 714, 717 (8th Cir. 2007).

Tusing then must "present evidence, that considered in its entirety (1) creates a fact issue as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." *Wingate*, 528 F.3d at 1079 (quotation, alteration, and citation omitted, emphasis in original). In some cases, a strong factual showing that the employer's proffered reason is "unworthy of credence" may, when combined with a strong prima facie case, create an inference of age discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 872 (8th Cir. 2008). Under the ADEA, however, age must be the "but-for" cause of the employer's decision. *Gross*, 129 S. Ct. at 2351. Thus, proof that

the explanation is false is necessary, but not sufficient, to show a pretext for discrimination under the ADEA. In other words, the plaintiff must show that the employer's stated reason was false and that age discrimination was the real reason. *See Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 872–73 (8th Cir. 2009); *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897–98 (8th Cir. 2004).

In the present case, Tusing has presented no evidence showing that the School District's stated reason for not interviewing her was false. The School District explained that it did not interview Tusing because she did not have a counseling license. Kelling testified that the School District limited interviews to persons with permanent or conditional counseling licenses because of the large number of applicants in the summer of 2007. It is undisputed that Tusing did not have a counseling license, conditional or otherwise, in the summer of 2007. Tusing argues that this reason was false because the School District's chart of applicants did not specifically mention whether some applicants in the "Group Interviews" and "Maybe" categories had a license. The School District, however, has provided undisputed evidence that all of those applicants were licensed before it hired them.

Finally, Tusing also contends that the School District's election to interview applicant Walljasper, who, like Tusing, had not completed her master's degree showed pretext; specifically, Tusing argues that she was "as qualified" as Walljasper. Walljasper, however, had a conditional license at the time, and Tusing did not. Because Tusing cannot show that the School District's reason for not interviewing her was false, she cannot show that age discrimination was the "but-for" cause of its decision not to hire her as a school counselor. This conclusion supports affirmance of the district court's grant of summary judgment for Tusing's age discrimination claim under the ADEA. However, because the ICRA permits a lesser showing to establish age discrimination, we must further consider whether Tusing has presented any evidence to show that age was a motivating factor in the School District's decision not to hire her as a school counselor.

We conclude that Tusing has not provided sufficient evidence to support an inference of age discrimination under the ICRA. Tusing first argues that Walljasper, who was 27 years old, was given preferential treatment in 2006. The evidence shows, however, that only four people applied for counselor positions in 2006, and over 30 people applied in 2007, when Tusing applied for the position. Given the size of the applicant pool in 2007, the School District could have reasonably limited interviews to licensed candidates, even if a license was not a strict job requirement. *Cf. Duffy v. Wolle*, 123 F.3d 1026, 1038 (8th Cir. 1997) (stating that "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination" (quotation and citation omitted)).

The only additional evidence Tusing provides is that "eight of the eleven counselors hired in 2006 and 2007 were below 40 years of age." As the School District correctly observes, eight of *thirteen* counselors hired in 2006 and 2007 were under 40 years old. Moreover, three of those counselors were *older* than Tusing. The School District's hiring of some counselors younger than Tusing, standing alone, does not create an inference that the School District discriminated against Tusing on the basis of her age. *See, e.g.*, *Carraher*, 503 F.3d at 719 (noting that being "replaced by someone substantially younger . . . possesses insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against"); *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007) (finding that plaintiff could not show the employer's reasons for her termination were a pretext for age discrimination where the plaintiff's only evidence was that she was replaced by someone younger). Thus, Tusing cannot show that the School District's stated reason for not interviewing her was a pretext for age discrimination. Accordingly, the district court properly granted summary judgment on Tusing's age discrimination claim with respect to the elementary school counselor position.

## 2. *Disability Discrimination Claim*

Next, Tusing argues that genuine issues of material fact exist on her claim of disability discrimination with respect to the school counselor position. She asserts that she was disabled within the meaning of the ADA because her depression substantially limited her ability to sleep and work, which, she claims, are both major life activities. She alternatively contends that she has a record of disability or was regarded as having a disability.

Tusing argues that she was not interviewed for the school counselor position because of her disability. She claims that the evidence creates a reasonable inference that the School District was aware of and motivated by her disabilities. In support of this argument, Tusing states that a *Des Moines Register*[4] article about her was published "just a few months before [she] started applying for literacy leader positions in 2006 and then started applying for counseling positions in 2007." This fact, according to Tusing, "raises a jury question on whether Ms. Keeling [sic] is telling the truth about her lack of knowledge of Ms. Tusing's depression and whether the depression was a motivating factor in not hiring Ms. Tusing as a literacy leader or counselor."

The School District counters that Tusing was not disabled within the meaning of the ADA. First, while it acknowledges that depression can substantially limit one's ability to sleep and work, it notes that Tusing testified in her deposition that she was

---

[4]In February 2006, while Tusing was teaching at Lovejoy Elementary, the *Des Moines Register* published an article about Tusing. The article described many difficult life experiences that "left Tusing with lifelong scars," including an abusive childhood, divorce, depression, alcoholism, and periods of homelessness. The office manager at Lovejoy, Clara Floyd, brought the article to the attention of Dr. Peg Floden, the principal of Lovejoy at that time. Someone posted the article in the Lovejoy teacher's lounge, where it remained for about two weeks. Kelling swore in an affidavit that she did not know about the article prior to this lawsuit.

not affected by her depression until the fall of 2007, after the alleged adverse employment actions occurred. Second, the School District asserts that Tusing did not have a record of disability because she produced no medical evidence of an ongoing impairment of a major life activity. Third, it argues that Tusing was not regarded as disabled because there is no evidence that any of the defendants knew she suffered from depression or otherwise perceived her to be disabled. The School District argues that even if the individual defendants had read the newspaper article, the article did not disclose an ongoing disability.

Tusing raised claims of disability discrimination under both the ADA and the ICRA. We apply the same analysis to claims of disability discrimination under the ADA and the ICRA. *Chalfant v. Titan Distrib. Inc.*, 475 F.3d 982, 988 n.3 (8th Cir. 2007). The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, a plaintiff must show "(1) that [she] has a disability within the meaning of the ADA; (2) that [s]he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that [s]he suffered an adverse employment action due to a disability." *Chalfant*, 475 F.3d at 988 (internal quotations and citation omitted).

a. *Whether Tusing Was Disabled*

A person is disabled within the meaning of the pre-2009 version of the ADA[5] if (1) she has "a physical or mental impairment that substantially limits one or more

---

[5]We recently held that recent amendments to the ADA, which broadened the definition of a disability, do not apply retroactively. *Nyrop v. Ind. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010). These amendments were effective January 1, 2009, *id.*, after the events giving rise to this suit. Accordingly, Tusing's claim will be analyzed under the pre-amendment version of the ADA.

of [her] major life activities"; (2) she has "a record of such an impairment"; or (3) she is "regarded as having such an impairment." *Chalfant*, 475 F.3d at 988 (internal quotations and citation omitted). We have previously noted that, under the pre-2009 interpretation of the ADA, "[t]he terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled . . . .'" *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002)).

"Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). We have noted that, in some extreme cases, sleeping may constitute a major life activity, if the plaintiff's "sleeping patterns are significantly different from the rest of the population's." *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 848 (8th Cir. 2005). Likewise, in limited cases, working may constitute a major life activity if the plaintiff is foreclosed from "the broad category of jobs for which [the plaintiff's] background and skills otherwise would fit him." *Id.* at 848; *see Gretillat*, 481 F.3d at 654 n.5 (noting that the Supreme Court has expressed doubt over whether working constitutes a major life activity but stating that, under some very limited circumstances, we have recognized it as a major life activity).

The term "substantially limits" means that a person is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)."To determine whether an individual is substantially limited in a major life activity, we consider: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" *Nyrop*, 616 F.3d at 734 (quoting 29 C.F.R. § 1630.2(j)(2)).

In the present case, Tusing's depression did not constitute a "disability" within the meaning of the ADA. Tusing testified that, in 2007, because of her depression, she "could not function anymore" and could not sleep, work, or eat, but she did not provide specifics about how much she was sleeping, working, or eating. She testified that she "was okay" until the fall of 2007 (after the events giving rise to her claims), but she also testified that she underwent treatment throughout 2007. Even assuming Tusing could show she was disabled within the meaning of the ADA, she cannot demonstrate that she suffered an adverse employment action because of her disability.

### b. *Whether Tusing Was Not Hired Because of Her Disability*

Tusing has no evidence to show that she was not hired as a school counselor because of her depression. At a minimum, she must show that the decision-makers knew about her depression. *See Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 936 (8th Cir. 2008) (stating that "[i]t is axiomatic that the [employer] must have known about his condition before it can be liable for discriminating against him because of that condition"). On this point, Tusing testified that she told some of her co-workers at Lovejoy Elementary that she was taking Prozac, but she also testified that she did not tell Kelling or anyone else with the School District about her depression. She provides no other evidence that any decision-makers knew about her depression, except to point to a February 2006 article in the *Des Moines Register* which noted her battle with depression (but did not state when she suffered from the depression). Tusing testified that this article was posted at Lovejoy for two weeks during the 2005–2006 school year. She has not provided evidence that the article was circulated within the School District or that any decision-makers read the article. In contrast,

Kelling testified that she had not seen the article and was unaware of Tusing's depression until Tusing filed her discrimination charge. To defeat a motion for summary judgment, Tusing cannot rely on mere assertions that the School District's decision-makers knew about her depression. *Wingate*, 528 F.3d 1078–79. Likewise, as explained above, Tusing has not refuted the School District's explanation that it did not hire her because she did not have a counseling license. Accordingly, the district court properly granted summary judgment on Tusing's claim of disability discrimination with respect to the school counselor position.

## B. *Literacy Leader Position*

Tusing next argues that genuine issues of material fact exist on her claims of age and disability discrimination with respect to the literacy leader position. First, she argues that her claim is not time-barred under either federal or state law. She argues that she applied for the position via email on July 16, 2007, and filed her charge with the Iowa Civil Rights Commission on December 21, 2007, well within the time periods required by the ADEA, ADA, and ICRA. Second she argues that "she did create genuine issues of fact with regards [sic] to her claims of age and disability discrimination for the reasons" she articulated in her claims based on the school counselor position.

The School District responds that Tusing's claims with respect to the literacy leader position should be dismissed for the same reasons as her claims with respect to the counselor position because she has not provided any evidence of discrimination specific to the literacy leader position.

As a preliminary matter, any charges of age or disability discrimination stemming from employment decisions prior to 2007 are time-barred by the applicable limitations statute. Under the ICRA, Tusing was required to bring her charge of discrimination within 180 days of the alleged discriminatory act. Iowa Code § 216.15(12) (2007). Under the ADEA and the ADA, Tusing was required to bring

a charge of discrimination within 300 days of the alleged discriminatory act. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e-5(e)(1). Kelling testified that, to apply for an advertised position in the School District, current employees only need to submit a letter of interest.

Tusing sent a letter expressing interest in a literacy leader position on April 25, 2006. The record is unclear about whether any literacy leaders were hired in 2006. She also sent Kelling an email on July 16, 2007, expressing interest in a half-time literacy leader position. The record suggests that two literacy leaders were hired in August 2007. Tusing filed her charge of discrimination with the Iowa Civil Rights Commission on December 21, 2007. Thus, Tusing's claims of age and disability discrimination with respect to the 2007 literacy leader position are not time-barred.

### 1. *Age Discrimination Claim*

With respect to her age discrimination claim, we assume Tusing can establish a prima facie case. In response, the School District puts forth the nondiscriminatory purpose that Tusing had not applied for an available position. According to Kelling, a current School District employee could apply for an available position simply by submitting a letter of interest. Although Tusing's email constituted a valid application, she only expressed interest in a half-time literacy leader position, and the School District had not advertised any half-time literacy leader positions.

Even if Tusing could show that the School District's reason was false, her only evidence of age discrimination is the School District's hiring a 31-year-old and a 40-year-old for the position. This fact, in isolation, is insufficient to create a reasonable inference of age discrimination. *See Carraher*, 503 F.3d at 719; *Thomas*, 483 F.3d at 529. Accordingly, the district court properly granted summary judgment on Tusing's age discrimination claim with respect to the literacy leader position.

## 2. *Disability Discrimination Claim*

Tusing's claim of disability discrimination with respect to the literacy leader position fails for the same reason her claim for disability discrimination with respect to the school counselor position failed. Because she cannot show that any decision-makers in the School District knew of her depression, she cannot show that her depression motivated the School District not to hire her as a literacy leader. Accordingly, the district court properly granted summary judgment on Tusing's disability discrimination claim with respect to the literacy leader position.

## C. *0.8 Teaching Position at Studebaker Elementary*

Finally, Tusing argues that there are genuine issues of material fact whether her transfer to the 0.8 position was the result of discrimination due to either age or disability animus. First, she argues that the transfer was an adverse employment action because she did not voluntarily take a lower-paying job. She asserts that, although she agreed to the transfer, she made the decision "under duress." Second, she argues that there is evidence "permitting a reasonable inference that [her] age or disability was a factor in [the School District's] refusal to permit her to continue in her full time job at Wright Elementary while doing her internship." On this point, she notes that the School District allowed Walljasper to work as a counselor and count those hours towards her internship requirements for her master's degree at Drake.

The School District argues that there was no adverse employment action to support Tusing's claims of age or disability discrimination because she admitted in her deposition that her transfer to Studebaker Elementary was voluntary and not the result of unlawful discrimination. We agree. Tusing's claims of age and disability discrimination fail because she cannot establish a prima facie case on either claim. Although Tusing transferred to a lower-paying job in order to teach and log her internship hours, she did not suffer an adverse employment action. In a related context, we stated:

While it is true that a plaintiff cannot state an adverse employment action if he voluntarily resigned, circumstances that rise to a constructive discharge—that is, one in which an employee had no choice but to quit because of the employer's actions—are also considered an adverse employment action. This is because the actions are not viewed as ones that are truly voluntary.

*Finney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003) (citations omitted). In extending the concept of constructive discharge to include constructive demotions, we explained that a plaintiff must show "both that he found the environment to be abusive and that an objective person in his position would have felt that he had to demote himself because of his discriminatory work conditions." *Id.*

Notwithstanding Tusing's assertion—made for the first time on appeal—that she transferred to the lower-paying job at Studebaker "under duress," the evidence shows she voluntarily transferred. Culp testified that, after consulting with the School District's head of counseling, she did not believe Tusing could teach full-time and complete her counseling internship requirements at the same time. She presented up to four options for Tusing, including an option to transfer to the 0.8 position at Studebaker Elementary, which would allow her to keep her benefits and log internship hours. Tusing testified that she knew she could have continued with her full-time teaching job if she had wanted. She also admitted that she voluntarily signed the new contract, and although she said she was "strongly persuaded" to do so, she provided no evidence of this persuasion. Under these circumstances, Tusing's decision to transfer to a lower-paying job cannot constitute an adverse employment action. Thus, the district court properly granted summary judgment on Tusing's age and disability discrimination claims with respect to the 0.8 position.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____