**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAWN HOLT,

        Plaintiff-Appellant,

v.

GRAND LAKE MENTAL HEALTH
CENTER, INC.,

        Defendant-Appellee.

No. 05-5031

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 03-CV-654-JOE-FHM)**

---

Jonathan Everett Shook (Randall D. Huggins with him on the brief), Shook, Huggins & Johnson, P.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Jo Anne Deaton (Lindsay J. McDowell with her on the brief), Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **MURPHY**, **EBEL** and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Dawn Opala Holt sued her former employer, Grand Lake Mental Health Center, Inc. ("GLMHC"), claiming GLMHC unlawfully terminated her because she has a disability.  The United States District Court for the Northern District of Oklahoma granted summary judgment to GLMHC, concluding Holt failed to demonstrate she was disabled within the meaning of the Americans with Disabilities Act.  Holt appeals.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm** the decision of the district court.

## II.    BACKGROUND

Holt is diagnosed with a mild form of cerebral palsy that adversely affects her speech and her ability to perform certain activities which require fine motor coordination.  Holt requires assistance when chopping, peeling, and slicing food.  She sometimes has difficulty eating and must chew her food thoroughly or it will become lodged in her throat.  She cannot cut her own fingernails or toenails.  Holt can dress herself, but sometimes must ask for help when buttoning her clothes.

Despite these challenges, Holt successfully held three different positions at GLMHC.  In September of 1993, she applied for a position as a counselor or case manager, and the following month, GLMHC hired her to work as a children's case manager.  In 1995, she was promoted to Intake Coordinator for Rogers County Clinic.  In 1998, Holt was appointed the acting County Administrator of the

Rogers County Clinic. Later that year, she was permanently appointed to the Rogers County Administrator position. With each new position, Holt was given more responsibility and a higher salary. Throughout this time and extending into 2000, Holt's supervisors consistently gave her positive performance evaluations, with summary scores that ranged between "exceptional" and "clearly outstanding."

In the beginning of 2001, however, perceptions of Holt's performance began to turn negative. At that time, Holt's supervisor, Charles Danley, observed a "marked change" in Holt's behavior. He stated Holt's behavior was erratic, she was late to meetings, and her staff indicated she was "hiding in her office" and not providing leadership. At the time, Holt told Danley she was experiencing an ongoing domestic violence situation. In April of 2001, Danley placed Holt on two weeks' paid administrative leave.

After returning to work, Holt received her annual performance evaluation, dated June 20, 2001. In spite of her recent problems, Holt received high marks for her performance over the preceding year. As in past years, her summary scores fell between "exceptional" and "clearly outstanding." Unlike past years, however, the evaluation noted Holt needed to recognize and address her personal issues.

In July of 2001, at the request of the Commissioner of the Department of Mental Health, Danley and Holt attended a meeting at the Rogers County Health Department. Members of the public, judges, the Assistant District Attorney for Rogers County, and others attended the meeting. During the meeting, some individuals criticized Holt. Danley observed Holt during the meeting, and characterized her reaction to the criticism as "deplorable." He described her response as being "very defensive" and "in denial." Moreover, he stated he saw Holt covering her ears, rocking back and forth, and apparently sucking her thumb in response to the criticism. Immediately after the meeting, Danley told Holt he was "enraged"and "very upset" by her conduct. He advised her there would be consequences as a result. Danley also told others at GLMHC he was concerned about Holt's conduct.

That summer, GLMHC was asked to begin providing mental health services in Tulsa after a local hospital closed. On August 1, 2001, Danley reassigned Holt to the position of acting Intake Coordinator in Tulsa. He selected Holt partly because he was not satisfied with her performance as Administrator at Rogers County Clinic, and partly because Holt lived closest to the Tulsa location. Holt had difficulty adjusting to the new position in Tulsa. She told GLMHC's Clinical Director, Dr. Janet Hackworth, that she felt overwhelmed by the paperwork and specifically noted she was having difficulty with the volume of writing that was

required of her.  Hackwork observed that Holt was occasionally tearful, agitated, and unfocused.

On August 8, Hackworth sent Holt home because she felt Holt had acted inappropriately in front of the Tulsa staff.  On the same day, Holt requested she be allowed to return to her old position as Rogers County Administrator.  In a text message to Danley and GLMHC's human resources manager, Holt stated she had problems keeping up with the writing demands of the Tulsa job due to her cerebral palsy.

After the August 8 incident, Danley's concerns about Holt's ability to be an administrative leader increased, and he decided to remove Holt from her position as County Administrator at the Rogers County Clinic.  At Holt's termination hearing, GLMHC's executive team told Holt they had observed a rapid deterioration in her ability to function on the job.  The team told Holt they believed the domestic abuse she was experiencing negatively affected her ability to perform at work.  Danley and the executive team noted GLMHC's "at will" employment policy, and stated they did not want to fire Holt for cause because they wanted to make it as easy as possible for her to transition to another job. The executive team offered Holt another position within GLMHC, where she would have less responsibility and receive less pay.  The team also left open the possibility that Holt might be able to return to her County Administrator position

after a period of time. Holt declined the offer and her employment with GLMHC was terminated effective August 17, 2001.

Holt sued GLMHC. She claimed it violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, by terminating her because of her cerebral palsy. GLMHC moved for summary judgment on grounds that Holt was not "disabled" within the meaning of the ADA. The district court granted GLMHC's motion. Holt appeals, alleging the district court erred when it determined she failed to present sufficient evidence to support her claim that cerebral palsy substantially limited her ability to perform one or more major life activities. She argues a reasonable jury could have found she was substantially limited in the major life activities of "performing manual tasks" or "caring for herself."

## III.   ANALYSIS

This court reviews *de novo* a district court's grant of summary judgment. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785 (10th Cir. 2004). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must examine the record to determine whether any genuine issue of material fact is in dispute, and must construe the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Curtis v. Okla. City*

*Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). "If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

To establish a valid claim under the ADA, a plaintiff must first prove by a preponderance of the evidence that she has a disability. *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir. 1999). To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities.[1] *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Holt's arguments on appeal focus solely on the third step of the test, the question of substantial limitation.

The Supreme Court has noted the term "substantial" must "be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky. Inc. v. Williams*, 534 U.S. 184, 197 (2002). The Court defines a

---

[1] Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law for court to decide. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Ascertaining whether the impairment substantially limits the major life activity is a question of fact for the jury, although a court is not precluded from deciding the issue on a motion for summary judgment. *Id*. at 1129, 1130 n.5.

"substantial" impairment as one "that prevents or severely restricts [an] individual from doing activities that are of central importance to most people's daily lives" and that is "permanent or long term." *Id*. at 198. Plaintiffs must prove the limitations caused by their impairments are substantial "in terms of their own experience." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). Accordingly, courts must assess the effects of an impairment on a case-by-case basis. *Toyota*, 534 U.S. at 198. Holt asserts the undisputed evidence creates a genuine issue of material fact as to whether her cerebral palsy substantially impairs her ability to perform the major life activities of performing manual tasks and caring for herself.

## A.    Performing Manual Tasks

To meet the ADA's definition of "disabled," a plaintiff must satisfy a "demanding standard." *Id*. at 197. "[I]mpairments that interfere in only a minor way with the performance of manual tasks" do not qualify as disabilities under the ADA. *Id*. Viewing the evidence in the light most favorable to Holt, this court must decide whether the evidence presented could allow a jury to conclude the limitations faced by Holt "amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability." *Id*. at 202.

Courts have granted summary judgment to defendants when the evidence shows a plaintiff is restricted from doing a few specific tasks, but can otherwise perform a variety of manual activities. For instance, the Court of Appeals for the Ninth Circuit held a plaintiff failed to demonstrate a substantial limitation when, although she could not type or write for long periods of time, she could perform "a wide range of manual tasks, including grocery shopping, driving, making beds, doing laundry, and dressing herself." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 797 (9th Cir. 2001). Similarly, in *Chanda v. Engelhard/ICC*, evidence demonstrated the plaintiff had a severe restriction in his ability to perform certain tasks such as typing and cutting foam-board. 234 F.3d 1219, 1223 (11th Cir. 2000). The Court of Appeals for the Eleventh Circuit determined the plaintiff's impairment fell "short of substantially limiting the major life activity of performing manual tasks" because the plaintiff admitted he could perform daily activities such as dressing himself, driving, and working with a computer. *Id*. The court concluded "a plaintiff must demonstrate that he is substantially limited in a range of manual tasks rather than a narrow category thereof." *Id*.

Summary judgment in favor of the defendant may not be appropriate, however, when evidence indicates a plaintiff's impairment restricts him from performing a wide range of manual tasks. In *Emory v. AstraZeneca*

*Pharmaceuticals LP*, the Court of Appeals for the Third Circuit court noted the plaintiff, Alvin Emory, was unable to perform a wide array of manual tasks. 401 F.3d 174, 181 (3d Cir. 2005). The act of getting dressed, for example, presented "huge hurdles" for Emory. *Id.* Emory could not lift heavy objects, open or close his right thumb, tie his shoes, tie a necktie, roll his sleeves, close buttons, put on a belt, cut his own nails, manipulate the top of a toothpaste tube, cut his own meat, open a jar, hold a pen in his right hand, pull heavy dishes and pans from the oven, or "perform certain basic household chores and repairs." *Id*. at 176. Confronted with this broad range of limitations, the court determined summary judgment was inappropriate because "[a] rational factfinder could reasonably conclude . . . Emory is substantially limited in his ability to perform manual tasks." *Id*. at 182.

The instant case is more similar to *Chanda* and *Thornton* than to *Emory*. The record shows Holt's limitations are narrow and specific; it does not indicate she is severely restricted in her ability to perform a broad range of manual tasks. For example, Holt is unable to perform the specific task of cutting her own nails, but she has presented no evidence that would allow a factfinder to conclude she is severely restricted in her ability to perform other manual tasks relating to personal hygiene. While Holt needs help when chopping, cutting, and slicing food, the evidence is insufficient to allow a factfinder to conclude she is severely restricted

-10-

in her ability to cook. It is undisputed that Holt occasionally must ask others for assistance when buttoning her clothing; Holt has introduced no evidence, however, that would permit a factfinder to conclude she is severely restricted in dressing herself. In short, based on the evidence presented,[2] a rational jury could not find Holt is substantially limited in her ability to perform manual tasks.

**B.  Caring for One's Self**

Holt also claims the limitations caused by her cerebral palsy substantially impair her ability to perform the major life activity of caring for herself. Caring for one's self "encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (quotation omitted). As discussed above, the relevant evidence shows Holt has difficultly with, or is prevented from performing, a limited number of manual tasks. It also indicates Holt sometimes has difficulty chewing and swallowing her food. These specific limitations, however, do not permit a rational factfinder to conclude Holt

---

[2]Holt also claims she substantially limited in her ability to perform manual tasks because she has difficulty chewing and swallowing. Chewing and swallowing, however, are not manual tasks. Instead, they are components of the major life activity of "caring for one's self." *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (noting that "feeding oneself" is a component of the major life activity of caring for one's self). Accordingly, we consider Holt's argument relating to her chewing and swallowing limitations in Part III.B, *infra*.

is prevented from caring for herself or is severely restricted in her ability to care for herself.  Accordingly, the district court did not err in granting summary judgment to GLMHC.

## IV.     CONCLUSION

For the reasons stated above, the order of the United States District Court for the Northern District of Oklahoma is **affirmed**.