# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3484

_____

| | | |
|---|---|---|
| Wyatt Yon, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Principal Life Insurance Company; | * | District of Iowa. |
| Principal Financial Services, Inc., | * | |
| doing business as Principal Connection, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: May 14, 2009
Filed: May 14, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Wyatt Yon appeals from the district court's entry of summary judgment in this employment discrimination case. Yon began working as a sales counselor for Principal Life Insurance Company in 1998 and continued in that position until his employment was terminated in 2005. His complaint alleges that he was wrongfully terminated in violation of Iowa public policy, the Fair Labor Standards Act, the Family Medical Leave Act, and the Iowa Wage Payment Collection Act. He appeals

only that portion of the district court's[1] order which grants summary judgment on the count alleging violation of Iowa public policy. We affirm.

I.

Yon was hired in 1998 by Principal Life Insurance Company ("Principal"), where he handled incoming customer calls in the company's Des Moines call center as a sales counselor. Sales counselors at Principal do not answer the calls initially. Instead, operators ascertain certain information and route the calls using a software system that generally matches the caller's account balance with the corresponding level of counselor. Higher level counselors typically receive calls from customers whose accounts have higher values, while lower level counselors receive calls from customers with service requests and those who have smaller balances.

Yon's primary duty as a sales counselor was to retain within the company the assets of participants in employer-sponsored retirement plans who had retired or were otherwise eligible to roll over the funds from those plans to an Individual Retirement Account ("IRA"). Sales counselors offered customers the choice of leaving their assets in the Personal Retirement Account of the former employer's plan or using those assets to purchase a retail IRA. Either option kept the assets within the company, as Principal continued to manage the Personal Retirement Account assets and sold its own IRAs. Principal established sales goals for its sales counselors, and during Yon's employment Principal changed the formula for calculating credit for the product the customer chose. In 2002, Principal began rewarding more favorably those sales counselors who sold more of the retail IRAs because the higher management fees for that product generated more profit.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

In addition, sales counselors were also rewarded for selling various investment products to customers for assets the customers held elsewhere. The counselors would recommend products based on the customer's needs as determined by answers the counselors received to questions they asked over the telephone.

Yon encountered some difficulties as a Principal employee. He was first subject to discipline in 1999. In March of that year, Principal gave him a written warning for failing to follow the company's parking policy. Nine months later, Yon was placed on final warning because of a customer complaint. In July 2001, Yon was placed on a Performance Improvement Plan by his manager, Dean Schmitz, because of problems with customer communications and workplace behavior. Yon met the expectations set forth in this Performance Improvement Plan, and Principal took no further action. Yon was placed on a new Performance Improvement Plan in January 2003 because of situations in which he put Principal at financial risk in the way he handled transactions with customer accounts. Those were apparently isolated instances. However, on May 7, 2003, Yon received a written update to the January Performance Improvement Plan during a meeting with Schmitz and Mark Spencer, the assistant sales manager. They informed Yon that his sales production results had raised concerns and that he could be formally disciplined or have his employment terminated if the results did not improve. The Performance Improvement Plan included sales goals for May and June.

Yon responded the next day with a memo in which he, too, expressed concern about deficiencies in his sales production and stated that he found the goals fair and acceptable. He also raised the issue of call routing, stating that higher value sales calls were being routed to certain favored counselors and questioning whether Principal was using selective call routing. Schmitz and Spencer met with Yon on May 21 to address his concerns. They explained that he could monitor his sales figures daily and discussed the call routing system with him, giving him a spreadsheet that showed statistics for a number of comparable sales counselors. During that meeting, Yon

-3-

expressed the opinion that males over forty years of age were the only employees Principal was placing on Performance Improvement Plans. Schmitz relayed Yon's comment to the company's Human Resources Department; the Department investigated and concluded otherwise.

On July 14, 2003, Yon received a written warning that he had not met the sales expectations set forth in the May 7 Performance Improvement Plan. Yon responded with a memo that same day, informing Schmitz that he had filed a claim under the Iowa Wage Collection Act and that Principal could not discriminate against him or terminate his employment because of that claim. He further discussed the calculation of his sales numbers and pointed to ways in which his performance was improving. That improvement must have continued, as Yon received notice on October 24, 2003 that he had met the expectations set forth in the July14 warning. However, that did not lay the matter to rest. On November 23, 2003, Yon sent a memo to the United States Department of Labor complaining that the July 14 warning violated his rights under the Family Medical Leave Act ("FMLA").[2] He also sent a copy of this memo to his supervisors, asking that they expunge the warning letter from his personnel file and communicate with his attorney about his FMLA allegations. Principal's counsel responded to Yon's attorney, but the company did not remove the letter from his file.

In April 2004, Yon exchanged a series of emails with some fellow employees about problems arising from a misdirected customer contribution. His language offended a recipient who complained about it, resulting in Yon being called to a meeting where supervisors advised him to be more careful in his communications. He responded by saying that he would "pussyfoot around" in future messages. Another incident occurred three months later in which he addressed fellow employees in what they deemed to be a harsh and unprofessional manner. A supervisor counseled him

---

[2]Yon requested and was approved for intermittent leave under the Family Medical Leave Act from May 27 through August 27, 2003, to care for his father.

again about the need to communicate without offending people, and told Yon that the supervisor "cannot spend . . . time following up and smoothing things out because of [Yon's] offensive communication." Within the month, Yon caused a stir by sending his supervisors an email in which he criticized the allocation of voicemail accounts to employees. His email used sarcastic and accusatory language. This series of incidents resulted in Yon receiving another written warning on September 8, 2004, in which he was told that his behavior would be monitored for six months to ensure that he communicated appropriately and professionally. The warning concluded:

> You are required to meet the expectations outlined in this memo and follow all policies in the employee handbook and your leader's work rules. Further incidents of sub-standard performance, including but not limited to: violation of company policy or leader work rules, use of profanity, unprofessional conduct, failure to meet job requirements, lack of dependability, insubordination, lack of team work or other inappropriate behavior or conduct can result in further disciplinary action up to and including termination of your employment.

During the September 8 meeting in which Yon received this warning, he delivered to his supervisors a copy of a letter he had written the day before to the U.S. Department of Labor. In it, Yon described what he believed were "several persistent and reoccurring procedural mistakes" in transactions affecting the retirement accounts of Principal customers. He suggested that the Department of Labor take a number of specific actions to protect those plan beneficiaries. The record does not reveal whether the Department of Labor responded to his letter, but Principal undertook an internal investigation and ultimately concluded that it was not engaging in procedural errors that adversely affected participants.

Yon asserts that his calls containing sales opportunities plummeted following this September 8 meeting. He did not meet his minimum productivity standards for August, September, or October, and as a consequence he received another written warning during a November 11 meeting. Yon received specific three-month sales

-5-

expectations and also lost his eligibility to receive sales calls valued at $100,000 or more. Yon refused to sign his written warning because he thought it impossible to meet the sales expectations it contained. In his view, Principal was manipulating the calls he received such that he would not have an opportunity to meet the company's goals.

Yon received his next and final warning on February 9, 2005, because he failed to meet the most recent three-month sales minimum. He acknowledged the accuracy of the numbers but again refused to sign the warning. When Principal reviewed Yon's sales numbers in early April, he had not met the expectations set forth in the final warning. On April 13, 2005, in a meeting with Schmitz and a human relations employee, Yon's employment was terminated. Yon acknowledged that he had not quite made the sales goal set forth in his final warning, and he later testified that he was not surprised by the termination.

Yon filed a petition in Iowa District Court alleging that he was wrongfully terminated in violation of Iowa public policy, the Fair Labor Standards Act, the Family and Medical Leave Act, and the Iowa Wage Payment Collection Act. Principal removed the action to the U.S. District Court and ultimately moved for summary judgment. The district court entered summary judgment for Principal on all counts. Yon appeals the order only as to the claim that he was wrongfully terminated in violation of Iowa public policy.

II.

We review de novo the district court's summary judgment order, using the same standard the district court used. McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000). Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Although we view the facts and inferences in the light most

favorable to Yon, the non-moving party, he has the obligation to come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Yon was an at-will employee of Principal. Although his status meant that Principal could terminate his employment at any time without reason, Fitzgerald v. Salsbury Chem., Inc., 613 N.W.2d 275, 280 (Iowa 2000), Iowa recognizes an exception to the at-will doctrine for discharges in violation of public policy. Id. at 281. Under Iowa law, a plaintiff who brings a claim of wrongful discharge in violation of public policy must prove: 1) the existence of a clearly-defined public policy that protects an activity; 2) that being discharged from employment would undermine the policy; 3) the plaintiff was discharged as a result of participating in the protected activity; and 4) no other justification existed for the termination. Lloyd v. Drake Univ., 686 N.W.2d 225, 228 (Iowa 2004). The protected conduct must be the determinative factor in the decision to terminate the employee, as concluded by a reasonable fact-finder. Fitzgerald, 613 N.W.2d at 289.

As the district court noted, there is no dispute with respect to the first two elements. Iowa public policy protects Yon's right to complain about violations of ERISA and the FMLA, and that right would be undermined if Yon's criticism was met with firing. The parties disagree over the last two factors. Principal asserts that Yon was discharged because he failed to meet the minimum productivity standards for sales counselors and not because of his protected activity. Yon argues that Principal made it nearly impossible for him to meet those standards by manipulating his sales calls so that he would receive fewer and less productive calls, and that his supervisors pushed him out of the department in which he worked by continually asking him if he was ready to move on.

The district court concluded that Yon did not create an issue of fact as to what caused Principal to discharge him. Considering the facts in the light most favorable

to Yon, the district court found nothing in the record "[o]ther than mere conjecture" that Principal was manipulating Yon's sales calls in reaction to his complaints to the Department of Labor. Yon submitted affidavits from former co-workers who criticized Principal's call routing system, but the district court determined that their conclusory allegations do not set forth additional facts in support of Yon's claim. Finally, the district court found no support in the record for Yon's allegation that he was subjected to an escalation of adverse actions in response to his complaints. Yon was subject to discipline in 1999 and 2001 and three more times in 2003 before he lodged a complaint with the Department of Labor alleging that Principal was violating the FMLA. His later incidents of discipline were attributable to his workplace behavior and to his failure to meet sales goals, the same themes as his earlier instances.

Yon urges us to reverse the judgment because there are legitimate questions of fact concerning what he asserts is the real reason Principal terminated his employment. He contends that Principal "set him up to fail" and that his theory is bolstered by the way in which the company discussed with him his opportunity to move out of the department after his second complaint to the Department of Labor. Our task is to determine whether a reasonable fact finder could conclude that Yon's complaints were the determinative factor in his dismissal. We are mindful that the causation standard Yon must meet is high, Fitzgerald, 613 N.W.2d at 289, and that, under Iowa law, proof that Yon was terminated after he complained to the Department of Labor is by itself insufficient to generate a fact question. See Phipps v. IASD Health Servs. Corp., 558 N.W.2d 198, 203 (Iowa 1997).

Yon points to the affidavits of two former co-workers who question the fairness of Principal's call routing system. He argues that they support his contention that he received fewer legitimate sales opportunities than other sales counselors. However, the affidavits contain nothing more than their subjective beliefs about the system as a whole, and neither makes mention of Yon. The affidavits add no admissible

evidence to create a question of fact. Moreover, Yon conceded that he did not meet the sales expectations set forth in his November 11, 2004 warning and in his February 9, 2005 final warning. Although his sales had increased after he received earlier warnings about his productivity, his numbers declined again in August 2004. Yon remained below his minimum productivity standards for two consecutive three-month periods. The warning Yon received on September 8, 2004 was for inappropriate and unprofessional behavior, and it was during this meeting that he informed his supervisors of his second Department of Labor complaint. By that time, however, his sales had already declined below the minimum expected of him.

During the September 8 meeting, Yon also stated that he believed his sales were down because Principal was managing his call flow. His complaint that day undermines the position he now takes, which is that his call flow was adversely affected in retaliation for his second complaint.

Our review of the record yields the same result as that reached by the district court. Yon has not provided adequate proof of causation. Accordingly, we need not address Principal's argument that Yon's wrongful termination claim is preempted. The district court's summary judgment order is affirmed.

_____