# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2083/2084

_____

| | |
|---|---|
| Sally Nyrop, | * |
| | * |
| Appellant/Cross-Appellee, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Independent School District No. 11, | * |
| | * |
| Appellee/Cross-Appellant. | * |

_____

Submitted: March 10, 2010
Filed: August 4, 2010

_____

Before RILEY, Chief Judge,[1] JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

RILEY, Chief Judge.

Sally Nyrop, an employee of the Independent School District No. 11 (School District), has multiple sclerosis (MS). Nyrop sued the School District, alleging it (1) failed to reasonably accommodate her disability, (2) refused to hire her for an administrative position because of her disability, and (3) retaliated against her for filing a charge of discrimination, all in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C.

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

§ 971 et seq., and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01 et seq. The district court[2] granted summary judgment to the School District and dismissed Nyrop's claims.[3] Nyrop appeals the grant of summary judgment, and the School District cross-appeals, asserting alternative theories for dismissal. We affirm the district court's grant of summary judgment in favor of the School District and dismiss the cross-appeal as moot.

## I.      BACKGROUND

### A.      Factual Background

In 1987, Sally Nyrop began working as an elementary music teacher for the School District. She held this position through the 2001-2002 school year. In 1995, Nyrop was diagnosed with MS. Nyrop claims when she was first diagnosed her "left side was gone," and she had difficulty converging her eyes. The "loss" of Nyrop's left side sensation or feeling was temporary, and eye exercises and eyeglass prisms successfully minimized Nyrop's eye condition. In addition, Nyrop experienced speech and swallowing problems, heat sensitivity, and lack of energy. Nyrop's doctor recommended the School District provide Nyrop with an air conditioned environment and a headset microphone to help her project her voice, and the School District accommodated these requests.

During the 2002-2003 school year, Nyrop took sabbatical leave and completed an unpaid administrative internship at a high school within the School District. The internship was a requirement for Nyrop to obtain her education specialist degree. During the summer of 2003, Nyrop applied for twenty-two administrative positions

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]The district court dismissed Nyrop's ADA and Rehabilitation Act claims with prejudice and declined to exercise supplemental jurisdiction over her MHRA claim, dismissing it without prejudice.

and four teacher on special assignment (TOSA) positions within the School District. She was not chosen for any of the positions and was set to return to her elementary music teacher position in the fall of 2003. However, after an elementary school principal became ill, Nyrop was chosen to fill an interim elementary school assistant principal position for the 2003-2004 school year.

Nyrop applied for thirteen administrative positions for the 2004-2005 school year, but again was not chosen. When an elementary school principal unexpectedly left the School District, Nyrop was hired to fill another interim assistant principal position. In 2005, after Nyrop unsuccessfully applied for ten administrative positions, she was hired as a TOSA for the 2005-2006 school year, which required her to perform both administrative and special education duties. Nyrop was hired to fill the same TOSA position for the 2006-2007 school year after unsuccessfully applying for thirteen administrative positions.

For the 2007-2008 school year, Nyrop again unsuccessfully applied for thirteen more administrative positions. The School District planned to have Nyrop work half-time as a special education teacher at one school and to resume teaching music half-time at another school. However, Nyrop informed the School District she could no longer perform the duties of a music teacher and filed a charge of discrimination with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission, alleging disability discrimination. Nyrop's doctor wrote a letter to the School District, at Nyrop's request, informing the School District Nyrop had "neuromuscular limitations" which made it difficult for Nyrop to model her voice for students, instruct students in a loud voice, and sing with students. The School District attempted to find another half-time position in which to place Nyrop. When Nyrop requested an administrative position, Sarah Kriewall, who worked for the School District, told Nyrop this was not possible because an administrative position would be considered a promotion, and the School District was not required to promote her to accommodate her disability. Nyrop declined placement in a paraprofessional

position. She ultimately decided to reduce her contract to half-time for the 2007-2008 school year. In 2008-2009, Nyrop was hired to fill a full-time TOSA position.

According to Nyrop, she currently experiences the following transient MS symptoms: a "[c]harley horse" in her tongue, a tremor in her voice, difficulty projecting her voice, impairment in her sensory capacity, pain in her eyes and across the top of her head, and continued fatigue and heat sensitivity. Nyrop's physician, Dr. Randall Schapiro, testified Nyrop had "done fairly well in terms of her MS" and was "walking and talking and functioning and living a fairly decent and normal life." Dr. Schapiro testified Nyrop had limitations with singing, mimicking speech, and fatigue. The School District's expert, Dr. Bruce Van Dyne, found Nyrop had "minimal, if any, objective abnormal findings," had "a completely normal speaking or conversational voice," and was "not substantially or materially impaired in any of the major life activities."

### B.     Procedural Background

In November 2007, Nyrop filed a complaint in the district court, alleging the School District (1) failed to reasonably accommodate her disability, (2) refused to hire her for an administrative position based on her disability, and (3) retaliated against her for filing a charge of discrimination, in violation of the ADA, Rehabilitation Act, and MHRA. The School District moved for summary judgment on all claims, arguing (1) Nyrop's accommodation claim failed because she was not disabled under the ADA, Rehabilitation Act, or MHRA; (2) Nyrop had no record of disability and had never been regarded as disabled; and (3) there was no evidence the School District had retaliated against her for filing a charge of discrimination.

The district court granted the School District's motion and dismissed all claims. The district court first found Nyrop failed to prove her physical impairment substantially limited a major life activity. The district court largely based this finding on Nyrop's own description of her limitations, observing, "When asked what MS

-4-

prevents her from doing, other than singing, Nyrop responded that she could not go on a Caribbean cruise because of heat and fatigue, and that she has difficulty lifting fifteen to twenty pounds." Nyrop had submitted an affidavit in opposition to summary judgment, claiming all she did was sleep, eat, and work. The district court disregarded the affidavit to the extent it was inconsistent with her deposition testimony.

Next, the district court determined Nyrop failed to establish she had a record of disability. The district court noted Nyrop continued teaching without significant interruption, her symptoms were intermittent and short in duration, and her early symptoms were ameliorated with accommodations. The district court also determined Nyrop failed to show the School District regarded her as disabled because the School District continued to employ her in various positions without expressing concern for her MS. The district court found an isolated comment from principal Barbara Winfield, who was not involved in any hiring decisions, expressing concern for Nyrop's stamina and health did not show Winfield regarded Nyrop as disabled, and, even if Winfield did regard Nyrop as disabled, her statement could not be attributable to the School District. Similarly, the district court found Kriewall's statement that Nyrop would not be given a promotion as an accommodation did not establish Nyrop was regarded as disabled because that statement was merely an accurate characterization of the School District's accommodation obligations. Finally, the district court determined Nyrop failed to establish a prima facie case of retaliation. Because the district court found Nyrop was not disabled, the district did not address the failure to accommodate claim.

The district court dismissed Nyrop's ADA and Rehabilitation Act claims with prejudice and declined to exercise supplemental jurisdiction over Nyrop's MHRA claims, dismissing the claims without prejudice. Nyrop appeals the district court's adverse grant of summary judgment on her discrimination and failure to accommodate claims, and the School District cross-appeals, asserting alternative grounds for dismissal.

-5-

## II.  DISCUSSION

### A.  Standard of Review

"We review de novo the district court's summary judgment order, using the same standard the district court used." Yon v. Principal Life Ins. Co., 605 F.3d 505, 509 (8th Cir. 2010). "Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)). In reviewing the record, we view the facts and make all inferences in the light most favorable to the nonmoving party, but the nonmoving party "has the obligation to come forward with specific facts showing that there is a genuine issue for trial." Id. at 510 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

### B.  Disability Discrimination

Nyrop argues the district court erred in dismissing her disability discrimination claim because (1) her MS substantially limits major life activities, (2) she has a record of such impairment, and (3) there is a question of fact whether the School District regarded her as disabled. See Finan v. Good Earth Tools, Inc., 565 F.3d 1076, 1079 (8th Cir. 2009) ("The ADA defines a disability, with respect to an individual, as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" (quoting 42 U.S.C. § 12102(1)). "The court analyzes MHRA and Title VII claims using the same standard." Torgerson v. City of Rochester, 605 F.3d 584, 594 (8th Cir. 2010).

#### 1.  Actual Disability

"To obtain relief under the ADA, [Nyrop] was required to show that [s]he was a disabled person within the meaning of the ADA, was qualified to perform the essential functions of h[er] job, and suffered an adverse employment action because of h[er] disability." Finan, 565 F.3d at 1079; see also Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008) (stating the same analysis applies

to both ADA and Rehabilitation Act claims).  To demonstrate a disability, Nyrop must show she has "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).

"Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (italics removed).  "Substantially limits" means one is:

   (i)     Unable to perform a major life activity that the average person in the general population can perform; or

   (ii)    Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. § 1630.2(j)(1) (italics removed).   To determine whether an individual is substantially limited in a major life activity, we consider: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  Id. § 1630.2(j)(2).  "The terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled . . . .'" Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)).[4]

_____

   [4]Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009.  See ADA Amendments Act of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008).   The amendments broadened the definition of what constitutes a disability and rejected the strict standards the Supreme Court set forth in Toyota.  See id. at 3554.  Several courts, including the district court in this case, as well as the First, Fifth, Sixth, Seventh, Ninth, and D.C. Circuits, have determined the

-7-

The district court recognized, and the parties do not dispute, MS is a physical impairment. However, the district court rightfully observed, in order to prove she is disabled, Nyrop cannot merely rely on her diagnosis but, instead, must show her MS substantially limits her in a major life activity. See Tjernagel v. Gates Corp., 533 F.3d 666, 671-72 (8th Cir. 2008) ("Having a physical . . . impairment is not enough because the impairment must also comprise a substantial limitation of a major life activity.").

In response to the School District's interrogatory asking Nyrop to describe which major life activities in which she is substantially limited, Nyrop claimed she was substantially limited in control of her tongue and larynx. Nyrop claimed this condition impacted her ability to speak clearly, project her voice, and sing. Nyrop also claimed she was substantially impaired in feeling and sensation, muscle control, and strength. In her deposition, Nyrop stated she sometimes had trouble swallowing, which she alleviated by turning her head. She explained her voice was sometimes reduced to a whisper or suddenly stopped, but she insisted, "I can always do a sound, if I put a little more breath in it." Nyrop also testified she had a loss of sensation in her hands, but the loss of sensation did not affect her day to day. Nyrop admitted her symptoms were "transient." Counsel for the School District asked Nyrop whether she was "impaired in [her] ability to do things on a day-to-day basis," and Nyrop

---

amendments do not apply retroactively, because Congress did not provide for retroactive application in the amendments . See Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009) (holding the ADA amendments are not retroactive); Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009); Fredricksen v. United Parcel Serv., Co., 581 F.3d 516, 521 n.1 (7th Cir. 2009) (same); Lytes v. DC Water and Sewer Auth., 572 F.3d 936, 938 (D.C. Cir. 2009) (same); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009) (same); E.E.O.C. v. Agro Distrib., LLC, 555 F.3d 462, 469-70 n.8 (5th Cir. 2009) (same); see also Colwell v. Rite Aid Corp., 602 F.3d 495, 501 n.5 (3d Cir. 2010) (declining to determine whether the amendments are retroactive, but observing every circuit to consider the issue has found the amendments not retroactive). We join our sister courts and hold the ADA Amendments Act of 2008 is not retroactive and thus inapplicable to Nyrop's claims.

responded, "I just keep working through." When asked whether she was prevented from doing anything other than teaching music, Nyrop declared she would not be able to go on a Caribbean cruise because of the heat and fatigue, and could not lift fifteen or twenty pounds. In response to the School District's summary judgment motion, Nyrop submitted a declaration listing other physical impairments associated with her MS and claiming, due to fatigue, all Nyrop did was "sleep, eat, and work."[5] Both Dr. Schapiro and Dr. Van Dyne observed Nyrop had minimal MS-related impairments and lived a relatively normal life.

Nyrop complains of difficulty projecting her voice at times, but in her deposition she explicitly stated she can always make a sound if she puts more breath into her speech. Similarly Nyrop failed to explain how her sensitivity to heat over seventy degrees, which is treated with air conditioning, frozen towels, and a cooling vest, substantially limits a major life activity. See Agro Distrib., 555 F.3d at 470-71 (finding an inability to control one's body temperature did not substantially limit a major life activity when body temperature could be regulated by drinking cold liquid, using a fan or air conditioning, or spraying oneself with water). Nyrop complains of fatigue, sensory loss, and difficulty in chewing and swallowing, but she has made no claim that these conditions impair her ability to care for herself. See Holt v. Grand Lake Mental Health Ctr., Inc., 443 F.3d 762, 767 (10th Cir. 2006) (finding difficulty in chewing and swallowing food was not a substantial limitation of the major life activity of caring for oneself); Croy v. Cobe Labs., Inc., 345 F.3d 1199, 1204 (10th Cir. 2003) (finding no disability despite appellant's claim "that when she is suffering

[5]The district court declared it would disregard Nyrop's declaration to the extent the declaration was inconsistent with Nyrop's deposition testimony; however, the district court did not give any examples of allegedly inconsistent statements. We decline to address whether the district court erred in disregarding some undefined portion of the declaration because, as we explain below, even considering the statements made in Nyrop's declaration, we still find Nyrop failed to establish she is disabled. Furthermore, Nyrop's general statement that all she does is "sleep, eat and work" fails to demonstrate Nyrop is substantially limited in a major life activity.

fatigue all of her life's activities are halted"). Finally, while Nyrop claims she is no longer able to teach music, she has never claimed she is unable to work, and, in fact, has continued working in a variety of positions. See Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 440 (8th Cir. 2007) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

We accept as true, Nyrop's MS-related impairments and physical symptoms; however, like the district court, we conclude Nyrop has failed to demonstrate her physical impairments substantially limit any major life activity. Because Nyrop has not made this showing, we find she does not have a disability as defined by the ADA.

### 2. Record of Disability

Next, Nyrop claims the district court erred in determining Nyrop did not have a record of disability. In order to show she has a record of disability, Nyrop must establish she "has a history of . . . [a] physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

When Nyrop was first diagnosed with MS in 1995, she experienced an inability to converge her eyes, which was treated with eyeglass prisms and eye exercises, and she states her "left side was gone" (describing a loss of sensation or feeling). Her physician, Dr. Sara Langer, wrote to the School District, explaining Nyrop's MS also caused her to be "very heat sensitive" and affected her "speech, swallowing and general energy level." Dr. Langer recommended Nyrop be provided with an air-conditioned environment and a microphone headset, and the School District complied with the recommendations. Following her MS diagnosis, Nyrop continued working in her music teacher position until 2002, and thereafter held various positions in the School District.

We accept as true Nyrop's history of claimed physical impairments, but this claim fails for the same reason as her actual disability claim. Nyrop has not shown her physical impairments substantially limit a major life activity.

### 3. Regarded as Disabled

Finally, Nyrop insists the district court erred in granting summary judgment in favor of the School District on Nyrop's disability discrimination claim because a fact question exists on the issue of whether the School District regarded Nyrop as disabled. To show the School District regarded Nyrop as disabled, Nyrop must prove she:

(1)     Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2)     Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3)     Has none of the [covered] impairments . . . but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

Nyrop claims the School District regarded her as disabled because: (1) each year, the School District renewed an accommodation plan for Nyrop, providing her with air conditioning and a microphone headset; (2) Winfield, then a principal in the School District, allegedly expressed doubt to a colleague about Nyrop's ability to handle an administrative job; (3) after Winfield left the School District, Winfield questioned Nyrop whether she had the stamina for an administrative job; and (4) Kriewall told Nyrop she would not be promoted.

-11-

The School District's awareness of Nyrop's physical impairments does not establish the School District regarded Nyrop as disabled. See Milholland, 569 F.3d at 567-68. Nor does the School District's allowance of accommodations establish such. See Cigan v. Chippewa Falls Sch. Dist., 388 F.3d 331, 335 (7th Cir. 2004).

> In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that the actual impairment substantially limits the employee's ability to work. . . . If an employer believes that an employee is unable to perform "one specific job," then the employee is not regarded as disabled.

Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 989 (8th Cir. 2007).

We agree with the district court that the record belies a finding the School District regarded Nyrop as having a physical impairment that substantially limited her ability to work or substantially limited any other major life activity. As the district court observed, the School District continued to employ Nyrop in her original music teacher position until 2002 when Nyrop took sabbatical leave and pursued an administrative position. The School District continually placed Nyrop in TOSA positions, and was prepared to return Nyrop to a position as a music teacher in 2007, until Nyrop informed the School District she could no longer be a music teacher.

We also agree with the district court that the isolated comments of Winfield and Kriewall do not create an issue of fact as to whether the School District regarded Nyrop as disabled. While Winfield was an employee of the School District, she never participated in the application or interview process for any of the administrative positions for which Nyrop applied, and any statement Winfield made after she retired from her School District position cannot be imputed to the School District. Assuming as true Winfield questioned Nyrop's stamina or ability to serve in an administrative position, these comments relate only to Nyrop's ability to perform one class of jobs, a position of promotion, and did not question Nyrop's ability to work in general. We likewise agree with the district court that Nyrop has taken Kriewall's comment that Nyrop would not be promoted to an administrative position out of context. The record demonstrates Kriewall made this comment in the context of informing Nyrop that an

-12-

administrative position would be considered a promotion, and Nyrop was not entitled to an administrative position as an accommodation.  See Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1019 (8th Cir. 2000) ("[P]romotion is not required.").  We conclude Nyrop has failed to present a question of material fact precluding summary judgment on her regarded-as-disabled claim.

Reviewing the School District's summary judgment de novo, viewing the facts and making all reasonable inferences in the light most favorable to Nyrop, we conclude summary judgment in favor of the School District was proper.  Nyrop failed to establish she had an impairment that substantially limited any major life activity, had a record of such an impairment, or was regarded as having such an impairment. We need not address Nyrop's failure to accommodate claim nor the School District's cross-appeal because our affirmance of the district court's finding that Nyrop was not disabled is dispositive of the remaining issues on appeal.

## III.    CONCLUSION

We affirm the judgment of the district court.  We dismiss the School District's cross-appeal as moot.

_____