LOKEN, Circuit Judge.
Julie Mahony appeals the district court’s[1] grant of summary judgment dismissing claims of wrongful termination against her former employer, Universal Pediatric Services, Inc. (“UPSI”); S. Tucker Anderson, its president and chief executive officer; and Connie Freeman, its principal owner. Mahony appeals only the dismissal of the claim that she was wrongfully terminated in violation of Iowa public policy. Reviewing the grant of summary judgment de novo, and viewing the facts in the light most favorable to Mahony, the nonmoving party, we affirm. Yon v. Principal Life Ins. Co., 605 F.3d 505, 509-10 (8th Cir.2010) (standard of review).
I.
UPSI and its affiliates operate multiple home health agency offices in Iowa and *1105 neighboring States that provide home nursing care, primarily to pediatric and young-adult patients. The offices have been certified as approved Medicare providers by the federal Centers for Medicare & Medicaid Services (CMS), making them eligible for reimbursement of qualifying expenses under federal Medicare and state Medicaid programs. See 42 C.F.R. §§ 424.505, 424.510; Iowa Admin. Code rule 441-77.9. Medicaid reimbursement accounts for some eighty percent of UPSI’s income.
Mahony was hired as UPSI’s Vice President of Nursing in 2006. One of her principal responsibilities was ensuring compliance with federal and state Medicare and Medicaid requirements. She conducted audits of the quality of services provided by UPSI, remedied deficiencies identified by regulatory agencies, and oversaw the completion and submission of documents required by those agencies.
In mid to late 2007, UPSI decided to divide its overburdened office in Carroll, Iowa, by opening an office in Sheldon, a town about one hundred miles northwest of Carroll that also would be a more convenient work location for employee Tracy Gorter. Because the Carroll office was already an approved provider, CMS rules provided alternative ways in which UPSI could qualify for Medicare and Medicaid reimbursement for services provided from a new location in Sheldon. It could apply to have Sheldon certified as a new, standalone office, which requires submission and approval of a detailed CMS-855A form that all new providers must submit, followed by an initial survey of the new office by an approved accreditation company.[2] Alternatively, UPSI could apply to open Sheldon as a branch of the Carroll office, which involves a much simpler approval process. See Form CMS-855A, at p.7, § 2. CEO Anderson decided to open Sheldon as a stand-alone office and instructed Mahony to proceed accordingly in late 2007 and early 2008.
In March 2008, UPSI’s office in Newton, Iowa, received a notice of multiple compliance deficiencies from the Iowa Department of Inspection and Appeals. The Newton administrator was terminated, and Mahony’s primary focus for the following two months was to deal with this compliance crisis and “maintain the functionality of the Newton office.” By May 2008, Mahony had again turned her attention to the new Sheldon office project. Meanwhile, Gorter was anxious that an office be opened in Sheldon, closer to where she lived. In early May, Anderson told Gorter she could get the Sheldon office ready to open, but it could not yet open. Mahony admitted that a June 1 opening date was discussed in management meetings but testified that she warned Anderson that much needed to be done before the office would be approved for Medicaid reimbursement, including completion of the CMS-855A form, portions of which were the responsibility of billing manager Tammy Chapman.
Mahony testified that she first learned on June 3 or June 4 that phone, fax, and internet connection had been installed in the Sheldon office, and that Gorter had moved in and been told she could go to the office to fax and make phone calls and copies. Mahony immediately advised Gorter, “I do not feel comfortable with you working out of that office” because the *1106 CMS-855A form was not yet submitted and the CMS approval process would “take some time.” At a management meeting on June 5, Mahony told Anderson, “we cannot open this office until we go through the [CMS approval] process.” Anderson became angry and heatedly blamed Mahony for the process being so far behind. Offended, Mahony stormed out of the office and worked on other matters from home for the next few days. Following the meeting, Anderson instructed Gorter to move out of the Sheldon office and work from home.
Mahony returned to work the following Monday, June 9. She filed a grievance with UPSI’s Human Resources Manager asserting that permitting Gorter to move into the Sheldon office “is a violation of the Conditions of Participation of the CMS program,” and complaining about Anderson’s “harassing conduct” on June 5. UPSI immediately investigated Mahony’s grievance with the assistance of outside counsel. The next day, the Human Resources Manager responded with a letter to Mahony. Regarding opening the Sheldon office, she wrote:
Based on the interviews conducted, everyone agrees that the Sheldon office will not be opened and Tracy Gorter will not be moving into the Sheldon office until proper procedures have been followed and compliance standards are met. Everyone interviewed shared frustration with the process relating to the Sheldon office and with the timeline of receiving information regarding the requirements for the office.
Regarding Anderson’s alleged harassment, the response stated, “based on the interviews, there was no discrimination or harassment,” and added, “as part of company policy, retaliation will not be accepted.” On June 13, UPSI terminated Mahony’s employment. On June 26, UPSI applied to CMS for approval to add a branch of the Carroll office in Sheldon. Anderson testified that the application was approved and the Sheldon office began submitting claims for Medicaid reimbursement on July 15. This lawsuit followed.
II.
Iowa law provides that an at-will employee may be discharged at any time, without cause, but a well-recognized exception to the at-will doctrine is the tort action for wrongful discharge in violation of public policy. Fitzgerald v. Salsbury Chem., Inc., 613 N.W.2d 275, 280-81 (Iowa 2000). The elements of this cause of action are (1) existence of a clearly defined public policy that protects an activity; (2) discharge from employment would undermine the policy; (3) the plaintiff was discharged as the result of participating in the protected activity; and (4) lack of other justification for the termination. Lloyd v. Drake Univ., 686 N.W.2d 225, 228 (Iowa 2004) (citations omitted). The first two issues are questions of law for the court to resolve. Fitzgerald, 613 N.W.2d at 282. Iowa courts “proceed cautiously, and will only extend such recognition to those policies that are well recognized and clearly defined.” Lloyd, 686 N.W.2d at 229 (quotation omitted).
Mahony’s primary argument on appeal is that she was terminated for objecting to and refusing to participate in her employer’s plan to submit false claims for Medicaid reimbursement from an office in Sheldon that was not an approved Medicare provider, conduct that would violate clear and well-recognized public policy as expressed in federal statutes prohibiting fraud and the submission of false claims to the government. See 18 U.S.C. § 1001; 31 U.S.C. § 3729. In the district court, Mahony emphasized the claim that her termination violated the federal False *1107 Claims Act provision that protects whistle-blowers, 31 U.S.C. § 3730(h)(1). She does not appeal the district court’s dismissal of that claim, only the dismissal of her state law claim. We note the Supreme Court of Iowa has questioned whether “the public policy to support the tort of wrongful discharge in Iowa can be derived from a federal statute.” Fitzgerald, 613 N.W.2d at 285 n. 4. We need not address that question because, in any event, Mahony’s public policy tort claim is factually flawed.
As the district court recognized, the principal flaw in this claim is that no false reimbursement claim was submitted and no acts of fraud occurred. Mahony agreed it was not unlawful to open the Sheldon office on June 1; her concern was submitting claims for Medicaid reimbursement before the office was an enrolled Medicare provider. She conceded she was not asked to submit false reimbursement claims from Sheldon. Indeed, no claims were submitted from Sheldon prior to her termination. The false-claim public policy theory is instead premised on Mahony’s belief that, because UPSI derived the vast majority of its income from Medicaid reimbursement, its plan to open the Sheldon office without first enrolling with Medicare would inevitably lead to the submission of false claims for reimbursement.
The summary judgment record provides no factual basis for this contention. First, the premise of intent to defraud is contrary to undisputed fact. When Mahony pointed out the compliance problem on June 5, Anderson became angry and blamed Mahony, perhaps unfairly. But he immediately remedied the problem by directing Gorter to move her workplace out of the office. Second, Mahony’s premise that the Sheldon office could not be approved to submit claims for Medicaid reimbursement until the time-consuming initial enrollment process was completed is simply wrong. UPSI had a quicker option' — which it exercised a few weeks later by enrolling Sheldon as a branch location of the enrolled Carroll office. We agree with Mahony that Iowa law protects employees who refuse to participate in unlawful activity, even if the unlawful activity did not in fact occur. See Fitzgerald, 613 N.W.2d at 286-87 (termination for refusing to commit perjury). But here, Mahony was not asked to participate in unlawful activity, and her speculation that UPSI was planning to break the law is contrary to undisputed fact.
Mahony argues the district court failed to recognize that CMS rules and regulations further the clear and well-defined public policy of protecting the health and welfare of the vulnerable people served by home health agencies. However, Mahony’s alleged protected activity related to ensuring compliance with regulations governing reimbursement, not with the quality of the healthcare services provided. This raises a serious question whether the regulatory requirement at issue will support an action for wrongful discharge in violation of public policy, or simply “impose[s] requirements whose fulfillment does not implicate fundamental public policy concerns.” Jasper v. H. Nizam, 764 N.W.2d 751, 765 (Iowa 2009) (quotation omitted). We need not address this question because, as we have explained, no violation of the alleged public policy was at issue. Mahony, an employee responsible for regulatory compliance, brought an impending non-compliance issue to her employer’s attention. UPSI took action to ensure continuing compliance and terminated Mahony for causing a resulting delay in lawfully expanding its operations. That internal employment dispute was governed by the at-will doctrine, not by its narrow public policy exception. Iowa courts apply this exception in a manner that ensures “the law will continue to give law-abiding employers the freedom to make managerial *1108 decisions in the operation of their businesses.” Id. at 763.
In these circumstances, the district court correctly concluded that, viewing the facts most favorably to Mahony, her discharge did not undermine clearly defined public policy as a matter of law. The judgment of the district court is affirmed. We deny as moot Mahony’s motion to strike portions of appellees’ appeal brief. See Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 524 (8th Cir.2010).

. The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

. Form CMS-855A is the Medicare Enrollment Application for institutional providers. The function of enrollment is not to license a facility to provide services. Rather, enrollment allows a provider to seek reimbursement for services provided to Medicare and, under Iowa law, Medicaid beneficiaries. Thus, it is not illegal to open a home health agency in Iowa without completing and submitting Form CMS-855A.